EDWARD SNOWDEN *vs.* THE STATE OF MARYLAND.

*Sale of Fertilizers without License—Fines and Penalties—Recovery of by Indictment—Suit—Repeal by Implication—Construction of Acts of 1882, ch. 451, and 1886, ch. 477—Dismissal of Writ of Error.*

The Act of 1882, ch. 451, passed to "prevent fraud in the manufacture and sale of commercial fertilizers and bone dust in Harford County," provides, that "all *suits* for the recovery of fines under the provisions of this Act, shall be brought by the Clerk to the County Commissioners in the name of the State of Maryland." HELD:

That under this Act an indictment will lie to enforce the recovery of the fine imposed for the sale of fertilizers without the license required by the Act.

The word "suit" includes not only a civil action, but also a criminal prosecution.

The repeal by implication of a former by a subsequent statute is not favored by the Courts, and will only be declared where they are clearly irreconcilable, and not susceptible of such fair interpretation as will allow of their standing together.

The Act of 1882, ch. 451, a public local law is not repealed by implication by the Act of 1886, ch. 477, a public general law; the two Acts are not inconsistent with each other; being different in their objects, purposes and provisions, they may stand together, and both be enforced.

Where judgment was entered and sentence passed on the 20th of February, and the petition for a writ of error was not filed until the 26th of March following, the writ of error will be dismissed, not having been sued out within the time limited by the rules of this Court.

APPEAL as upon Writ of Error, from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

Snowden *vs.* State.

The cause was argued before ALVEY, C. J., STONE, MILLER, BRYAN, and McSHERRY, J.

*B. Howard Haman*, for the appellant.

Courts will hold a law to be repealed by a subsequent law without any express clause of repeal, where the provisions are so repugnant that they cannot stand together. Test of repugnancy is, can the two laws stand together and be executed at one and the same time? *Davis vs. State*, 7 *Md.*, 151; *Webb vs. Ridgely*, 38 *Md.*, 371; *People vs. Van Nort*, 64 *Barb.*, 205; *New London N. R. Co. vs. Boston & A. R. Co.*, 102 *Mass.*, 386.

Even where two Acts are not in terms repugnant, yet if the latter Act covers the whole subject of the first, and embraces new provisions plainly showing that it was intended as a substitute for the first Act, it will operate as a repeal of that Act. *Mayor, etc., of N. Y. City vs. The Broadway & Seventh Ave. R. R. Co.*, 19 *N. Y. Sup. Ct.*, 571; *Longlois vs. Longlois*, 48 *Ind.*, 60; *Andrews vs. The People*, 75 *Ill.*, 605; *U. S. vs. Tynen*, 11 *Wal.*, 92; *Henderson's Tobacco*, 11 *Wal.*, 652.

The rule of law is clear that where there is a local Act and a general Act upon the same subject, the general Act will prevail. *Rex vs. Cator*, 4 *Burr.*, 2026; *Nusser vs. Comm.*, 25 *Penn. State*, 126; *Keller vs. Comm.*, 71 *Penn. State*, 413; *Commonwealth vs. Pointer*, 5 *Bush*, 302; *State vs. Douglass*, 33 *N. J. L.*, 366. See also, *Gregory's Case*, 6 *Coke*, 19 *b; Rounds vs. Waymart Borough*, 81 *Penn. State*, 395; *Chesapeake & Ohio Canal Co. vs. Balt. & Ohio Railroad Co.*, 4 *Gill & J.*, 7; *State vs. Northern Central Railroad Co.*, 44 *Md.*, 167; *Ex parte Crow Dog*, 109 *U. S.*, 570; *Great Cent. Gas Co. vs. Clarke*, 103 *E. C. L.*, 812.

Snowden *vs.* State.

*Wm. Pinkney Whyte, Attorney-General,* for the appellee.

The answer to the argument, that there is an implied repeal of the Act of 1882 by the Act of 1886 is, "that the general doctrine on the subject of implied repeals is, that where there are two Acts on the same subject, both are to be given effect, if possible."

"Where the powers or directions contained in several Acts are such, as may well subsist together, a repeal by implication is never declared." This is, substantially, the language of all the authorities. *Henderson's Tobacco,* 11 *Wall.,* 652; *Chesapeake & Ohio Canal Co. vs. Balto & Ohio R. R. Co.,* 4 *Gill & J.,* 152; *Dwarris on Statutes,* 674; *Appeal Tax Court of Balto. City vs. Western Md. R. Co.,* 50 *Md.,* 296, 297.

McSHERRY, J., delivered the opinion of the Court.

The appellant was indicted by the grand jury of Harford County for selling fertilizers without having procured the license prescribed by the Act of Assembly of eighteen hundred and eighty-two, chapter four hundred and fifty-one. He demurred to the indictment, and upon the demurrer being overruled, he pleaded not guilty, was put upon trial, was convicted and sentenced to pay a fine. Whether the Circuit Court was correct in its ruling on the demurrer is the question presented for review by the writ of error, under which the case has been brought into this Court.

The Act of eighteen hundred and eighty-two, which is entitled, "an Act to prevent fraud in the manufacture and sale of commercial fertilizers and bone dust in Harford County," provides, in substance, that every person who shall offer for sale any commercial fertilizer or bone dust, the price of which shall exceed ten dollars a ton, shall affix to every package a certifi-

cate stating the number of pounds contained therein; the name or trade mark of the article; the name of the manufacturer and the place of manufacture, and a chemical analysis stating the percentage of certain of the article's ingredients; that a certificate of the said analysis, verified by affidavit, shall be filed with the Clerk of the County Commissioners; that the seller shall pay, annually, a license fee of twenty-five dollars, and shall give bond which shall be answerable for the damages and fines imposed by the Act; and that a chemist shall be appointed by the Governor to make analyses in the cases designated. For a violation of the provisions of the Act, a fine is prescribed of not less than two hundred dollars for the first offence and of not less than five hundred dollars for every subsequent offence. These fines and the license fees, after the payment of enumerated expenses, are directed to be placed to the credit of the public roads of Harford County.

The judgment of the Circuit Court is alleged to be erroneous on two grounds, viz., first, because an indictment does not lie to enforce the penalty prescribed by said Act for its violation; and second, because the Act of eighteen hundred and eighty-six, chapter four hundred and seventy-seven, works a repeal of said Act of eighteen hundred and eighty-two, and because the last named Act is in abeyance and inoperative, so long as said Act of eighteen hundred and eighty-six remains in force.

It has been insisted by the appellant, that an indictment is not the proper mode of procedure for enforcing the fines provided by the Act of eighteen hundred and eighty-two, because of the provisions of sections seven and nine of that statute. Those sections declare that "*suit* may be brought for the recovery of fines and damages," and that "all *suits* for the recovery of fines

under the provisions of this Act shall be brought by the Clerk to the County Commissioners, in the name of the State of Maryland." It has been argued that the word *suit* used in these sections necessarily means *civil* proceedings, and that consequently no indictment will lie. In other words, it is insisted that whenever a statute points out the mode of enforcing penalties imposed by it, that mode alone must be pursued; that this Act does point out a mode of enforcing its penalties; that the mode pointed out is by *civil suit;* that, therefore, all criminal proceedings are, in terms, excluded. This is a construction which, in our opinion, ought not to prevail. It could scarcely, we think, have been the intention of the Legislature to allow the Clerk to the County Commissioners to use the name of the State in prosecuting civil suits for the recovery of fines under this Act, without having made some appropriate provision for the appearance, in behalf of the State, of the Attorney-General or, at least, the State's Attorney of Harford County. The statute is a penal one and the penalties are very heavy. It would require explicit language in such a statute, or in its absence a strong implication equivalent to such language, to warrant the Court in holding that a subordinate officer—a mere Clerk to the County Commissioners—was entrusted with the exclusive power to sue in the name of the State for the recovery of such severe fines as are provided in this statute. We see nothing in the language quoted from the Act, or in any of its other provisions, to justify this Court in assenting to the construction contended for. That construction involves, if adopted, a denial of jurisdiction in the Circuit Court as a criminal Court, and a wide departure from the system established by the Act of eighteen hundred and eighty, chapter two hundred and eleven, for the recovery of fines and forfeitures in all

similar cases. These consequences, in this instance, are urged as the inevitable results following from the use of the word "*suit*," as heretofore stated. But the meaning ascribed to the word "suit," as used in this Act, is entirely too narrow. "In its most extended sense, the word suit includes not only a civil action, but also a criminal prosecution, as indictment, information and a conviction by a magistrate.". (*Bouvier's Law Dic., Title Suit*.) If this definition be correct, as we think it is, it cannot be true that a civil proceeding is necessarily the mode, or the exclusive mode, designated by this statute for the recovery of the fines imposed by it; and that, consequently, an indictment cannot be maintained. Indeed, under the Act of eighteen hundred and eighty; chapter two hundred and eleven, in all instances proceedings for the recovery of fines must be by indictment; and there is nothing to be found in the language of the statute which we are considering that makes the manner of its enforcement an exception. None of its provisions, when interpreted according to the authority quoted, are repugnant to those of the Act of eighteen hundred and eighty; and the two Acts have been simultaneously re-enacted, the one in the Public Local Laws, the other in the Public General Laws, by the adoption of Mr. Poe's Code by the General Assembly, at its recent session.

We do not think the second assignment of error is tenable either. "The repeal by mere implication of a former by a subsequent statute is never favored by the Courts, and it is only where they are clearly irreconcilable and not susceptible of any such fair interpretation as will allow of their standing together, that such repeal will be declared." *Higgins vs. State*, 64 *Md.*, 419. The Act of eighteen hundred and eighty-six is a Public General Law. The Act of eighteen hundred and eighty-two is a Public Local Law. If there

was, in fact, any irreconcilable conflict between them preventing both from being operative, the local law, according to section eleven of the first Article of the Code. would prevail over the general law; and the general law would not, as averred in the assignment of errors, repeal or hold in abeyance the local law. But we fail to find any such repugnancy between the Act of eighteen hundred and eighty-six and the Act before us, as would work a repeal of the latter. We have already adverted to the provisions of the Act of eighteen hundred and eighty-two. The Act of eighteen hundred and eighty-six is entitled, "an Act to regulate the inspection and sale of Commercial Fertilizers in the State of Maryland." It provides that every package of fertilizer offered for sale shall have stamped thereon the name of the manufacturer, the place of manufacture, the net weight of its contents, and an analysis stating the percentage of certain of its component parts: That the manufacturer, dealer and importer before selling or offering for sale shall procure from the Comptroller of the Treasury a license which shall be rated upon the amount contemplated to be sold; and that it shall be the duty of the Maryland Agricultural College to analyze without charge all samples of fertilizer sent to it by any farmer, planter, grower or manufacturer. It then provides a fine not exceeding two hundred dollars for a violation of its terms. The license fees are directed to be paid over to the Maryland Agricultural College to the extent of two thousand dollars, and the fines go, as other fines, to the State.

It will thus be seen that the titles of these two Acts are entirely different—the one being an Act to prevent fraud in the sale of fertilizers; and the other an Act to provide a system of *inspections* of fertilizers: That the one requires a certificate of the contents of each

14                    v. 69.

package to be placed on the package and a sworn copy to be filed with the clerk óf the County Commissioners. The other only enacts that a statement of the analysis shall be stamped upon the package together with the owner's trade mark, if any: That the licenses are to be issued by different officers and the analyses are to be made by different chemists: That the license fees and the fines are different, and are applied or appropriated to different purposes, and that one Act is applicable to the whole State and the other to but one county. It is quite evident, therefore, that these two Acts are not inconsistent with each other; that they do not cover the same subject-matter and that they were not intended to do so. This is made more apparent by the fact that both of these Acts were re-enacted by the last General Assembly when, by chapter seventy-four, it adopted the Code prepared by Mr. Poe—the Act of eighteen hundred and eighty-six being codified in sections one to five, inclusive, of Article sixty of the Code of Public General Laws; and the Act of eighteen hundred and eighty-two in sections ninety-one to one hundred, both inclusive, of Article thirteen of the Code of Public Local Laws. Thus, the two Acts being different in their objects, purposes and provisions may stand together and both be enforced. The practical result of this is that persons engaged in the sale of fertilizers in Harford County are obliged to procure two licenses; one from the State under the Act of eighteen hundred and eighty-six; and the other from the clerk to the County Commissioners of Harford County under the Act of eighteen hundred and eighty-two. It was clearly competent for the Legislature to so provide, and being within the scope of their undoubted authority their judgment with respect to the expediency of the measure is not open to inquiry or review by us.

Western Telegraph Co. *vs.* Balto. & Ohio R. R. Co., *et al.*

It follows from what has been said that proceedings by way of indictment were proper for the recovery of the fine in this case; and we hold that both Acts are in force in Harford County. There was, consequently, no error committed by the Circuit Court in its judgment on the demurrer.

We have gone into a consideration of the merits of this case to the end that the questions in issue might be finally settled without further or other litigation; though, properly, the writ of error must be dismissed because not sued out within the time limited in the rules of this Court. The judgment was entered against the appellant and sentence was passed upon him on February the twentieth last, but his petition for a writ of error was not filed until the twenty-sixth day of the following March. This was not, as decided in *State vs. Bowers*, 65 *Md.*, 363, within the time allowed by the rules of this Court; and consequently the writ must be dismissed.

*Writ of Error dismissed.*

(Decided 13th June, 1888.)