(Decided December 6th, 1895.)

---

ALFRED E. SMYRK, City Commissioner, vs. JOHN E. SHARP and Others.

*Municipal Ordinances for Repaving Streets, Appropriating a Larger Sum of Money than Available—Priority between Ordinances—Repeal by Implication.*

An ordinance of the Mayor and City Council of Baltimore appropriated $1,600,000 for repaving such streets in said city as might be designated by ordinance. After the ratification of this ordinance by popular vote, a number of ordinances were passed from time to time for the repaving of the different streets named in them, the cost of which amounted to a larger sum of money than was available under the

original appropriation. The last ordinance passed directed that S. street should be paved out of certain balances unexpended under former appropriations. At that time the cost of paving the streets directed to be paved by prior unexecuted ordinances would be $650,000, and there only remained available $132,000 of the amount originally authorized to be expended. Petitioners applied for a *mandamus* directing the City Commissioner to pave S. street from the unexpended balances mentioned in the ordinance concerning that street. *Held,* that the later ordinances directing certain streets to be paved did not operate as a repeal by implication of the prior ordinances on account of the insufficiency of the amount available; that neither the Court nor the municipal officers had power to designate which streets should be paved, but that it was the duty of the City Council to declare how and in what manner the money available for repaving should be expended.

Appeal from an order of the Superior Court of Baltimore City (DOBLER, J.) directing the issue of a writ of *mandamus* compelling the City Commissioner to repave forthwith, Saratoga street between Fremont and Carrollton avenues, under an ordinance which became operative on September 28, 1894. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Thomas G. Hayes, City Counsellor* (with whom was *William S. Bryan, Jr.,* but the Court declined to hear *Mr. Bryan*), for the appellant.

It is submitted that the opinion of the Court in *M. & C. C. of Balto.* v. *Sharp* settles conclusively the questions involved in this appeal. The Court there holds that it is not a judicial question as to the priority of the repavement under the sundry ordinances for repavement, which have been passed and which exceed the amount appropriated for repavement; but one solely for the City Council. This being true there certainly could be no jurisdiction in the Court to compel, by *mandamus*, the appellant to repave Saratoga street. This point was distinctly made by the prayers of the appellant, which were rejected, and the exception to the passage of order granting the *mandamus*.

The City Council had not, at the date of the institution of this suit, nor has it since, decided the order in which the repavement shall be done. This is a matter for its future consideration and decision.

*William A. Fisher* and *Arthur George Brown*, for the appellees.

The Saratoga Street Ordinance is mandatory in terms and in legal effect. *Pumphrey* v. *Mayor, &c.*, 47 Md. 151. It is, also, the latest expression of the legislative will of the Mayor and City Council of Baltimore, in respect to street paving, and as to the appropriation of any part of the $1,600,000, which was set apart for that purpose.

The cardinal principle is that the latest declaration of the legislative will must prevail, and that, therefore, while repeals by implication are not favored, when there is an inconsistency, the latter Act must prevail. Another principle, well established, is that when the legislative mind has been directed to some special or particular subject, legislation of a general nature shall not be treated as intended to repeal or interfere with that of the more special or particular character, unless this intent is made clearly to appear by sufficient reference in some manner, or the two are entirely irreconcilable. For the establishment of the first of said principles we refer to the following authorities: Sedgwick on Statutory and Const. Law, 2d ed., page 104; *Dean of Ely* v. *Bliss*, 5 Beav. 574.

And for the establishment of the second of said principles, we refer to: 9th L. Lib., Dwarris on Stat., 658–9; Sedgwick St. and Con. Law, 2d ed., 97–103, and note, page 98; *Felt* v. *Felt*, 19 Wis. 193–6; *Fosdick* v. *Perrysburg*, 14 Ohio State, 485–7; *London, &c., R. R. Co.* v. *Limehouse Board*, 3 K. & J. 123; *Luke* v. *State*, 5 Fla. 194; *State* v. *N. C. R. W. Co.*, 44 Md. 167; *ex parte Crow Dog*, 109 U. S. 570; 4 G. & J. (Brantly's ed.) 7, note *n.*

The provision made for Saratoga street was special; that is to say, it was entirely from balances, which are admitted

and proved to have been left over after the repavement of other streets, the repavement of which had been already completed, and it was a particular appropriation of a part of the fund; therefore the Courts are bound by the obligation of both the principles before stated to give effect to it.

These well-established principles have been rigorously enforced in *State* v. *N. C. Ry. Co.*, 44 Md. 131, 167; *Strauss* v. *Heiss*, 48 Md. 292; *Appeal Tax Court* v. *Western Md. R. R. Co.* 50 Md. 274, 296; *State* v. *Yewell*, 63 Md. 120; *State* v. *Davis*, 70 Md. 237.

More than a year has passed since the Saratoga Street Ordinance became a law. It stands unimpaired and unrepealed, and being the latest and the deliberate and final expression of the will of the municipal legislature, constitutionally adopted, the Courts have the simple duty to enforce it. The City Commissioner had, by the terms of this ordinance, no discretion in the matter, and none could lawfully have been delegated to him. *City of Chicago* v. *Trotter*, 136 Ill. 430; *Thompson* v. *Schemmerhorn*, 6 N. Y. 92. He not only failed, but refused to perform his duty, and thereupon the appellees—strictly within their right— applied for a *mandamus*, which the Superior Court ordered. *Pumphrey* v. *Mayor, &c.*, 47 Md. 145, 151. The 6th paragraph of the answer sets up certain frivolous and futile excuses. The duty which the City Commissioners was called upon to perform, was to insert the advertisement inviting bids, to ascertain the lowest bidder, and to make the contract; and the testimony proved that he had all the clerical and other force necessary to enable him to perform these functions. It is respectfully submitted, that the order granted by the Superior Court should be sustained.

Boyd, J., delivered the opinion of the Court.

By the Act of 1892, chapter 138, the Mayor and City Council of Baltimore were authorized to issue the stock of the city to an amount not exceeding six million dollars, for

the purpose of procuring funds with which to build a court house, to open, widen, repair and pave the streets and make other permanent improvements. An ordinance was passed by which, among other provisions, one million six hundred thousand dollars were set apart "for paying the cost of repaving with improved pavements such streets in Baltimore City, the repaving of which shall be required by ordinance of the Mayor and City Council of Baltimore." It was duly submitted to and approved by the voters of the city. Beginning in February, 1893, the Mayor and City Council of Baltimore passed a number of ordinances appropriating various amounts and making provision for repaving different streets named in them, so that by the time the work commenced—May 1st, 1893—the entire sum authorized for this purpose had been appropriated. They continued, however, after that time to pass ordinances providing for the repaving of other streets with the money thus set apart, and by their provisions sixteen or eighteen streets are yet to be paved, which will cost six hundred and fifty thousand dollars, whilst there only remain one hundred and thirty-two thousand dollars available for the purpose.

With this condition of affairs the present appellees, Messrs. Sharp, Francke and Danaker, owners of certain property on Saratoga street; Messrs. Wright, Flaggs and Meikle, owners of parcels of ground on Patterson avenue, and Benjamin B. Porter, the owner of a lot on McCulloh street, obtained an injunction against the Mayor and City Council of Baltimore, Ferdinand C. Latrobe, Mayor, and Alfred E. Smyrk, City Commissioner, to prohibit them from proceeding under an ordinance passed Feby. 27, 1893, to repave certain portions of Franklin street until the legal effect and priorities of certain other ordinances providing for repaving Saratoga and McCulloh streets and Patterson avenue were determined. That case was before this Court at its last April term. The important questions raised were, whether the ordinances relied on by the plaintiffs, as the latest declaration of the legislative will, repealed the Franklin

street and other prior ordinances, and whether the Mayor (or City Commissioner) was vested with the discretion of selecting the streets to be paved with the unexpended balance in hand. There were also some technical and other points raised, but they need not now be mentioned.

When the April term of this Court was about to adjourn we said: " We hold that the Mayor of Baltimore City has no authority to select which of the sixteen streets mentioned in the several ordinances referred to in the bill shall be first paved, or to designate the order in which they shall be paved. We further hold that neither the Circuit Court nor this Court has such authority. But inasmuch as confessedly there are not sufficient funds in the city treasury to pay for all the work, it is the duty of the City Council to declare how, and in what order, the money available for this paving shall be expended. On the face of the bill, therefore, the injunction ought to be sustained until the City Council shall determine in what order the streets shall be paved. An opinion will hereafter be filed in behalf of this Court," and the order granting the injunction was affirmed.

Before our conclusions in that case had been announced, as above stated, the order from which this appeal was taken was passed directing the issue of a writ of *mandamus* at the instance of these appellees to the City Commissioner, commanding him to comply with the terms of the ordinance passed to repave Saratoga street, from Fremont street to Carrollton avenue, or so much thereof as the surplus ascertained to have been derived from ordinance No. 42, approved March 16, 1893, and No. 102, approved May 1st, 1893, shall be found by him to cover the cost of, etc.

The opinion not yet having been filed, further argument was heard in behalf of the appellees in this case, but the main points were practically the same as those previously urged.

For the purposes of this opinion it will be conceded that the Saratoga street ordinance took effect in the fall of 1894, and it was proven that there is no unexecuted ordinance,

appropriating any part of the million six hundred thousand dollars, later in date than it.

It is contended on the part of the appellees that the ordinance to repave Saratoga street must prevail over unexecuted ordinances passed prior to it, as it is the latest declaration of the legislative will. The general principle relied on by them that " where there are two Acts on the same subject the rule is to give effect to both if possible, but if the two are repugnant in any of their provisions, the latter Act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first " is too well established to admit of question. But is it applicable to a case of this character ? If the Constitution of Maryland prohibited the Legislature from appropriating more than some fixed sum, say one hundred thousand dollars per annum, to reformatory and other institutions, and the Legislature passed Acts appropriating the whole amount to five institutions, and then subsequently appropriated ten thousand dollars to another, could it be said that the latter *pro tanto* repealed the former ? Might it not more properly be declared a nullity, on the ground that the amount authorized had already been appropriated ? Then again, these ordinances cannot strictly be said to be on the same subject. Each provides for repaving a separate street, or part of a street, from the others. It is true that they all look to the same general source for the money, but they simply appropriate—set apart—certain amounts for the respective streets. It is impossible for the Court to say, under such circumstances, that the City Council intended to give the last ordinance priority over the others, merely because it is the last appropriation of money. If we were to be governed by the order in which they were passed, it would probably seem more reasonable to assume that the members of the Council intended to give the first preference, for they might be presumed to have first provided for those streets that in their opinion most needed the improvements and were most pressing. They probably supposed that there would be sufficient balances from the

various appropriations to enable the authorities to pave all the streets included in the ordinances. But when the contrary was ascertained and there are yet sixteen or more to be paved, the cost of which would be six hundred and fifty thousand dollars, and there only remain about one hundred and thirty-two thousand dollars of the amount authorized to be so expended, the City Council, and not the Mayor, City Commissioner or Court, should determine how and in what order it should be so used. The ordinance submitted to the people provided that the one million six hundred thousand dollars should be used for paying the cost of repaving the streets "which shall be required by ordinance of the Mayor and City Council of Baltimore"—not such streets as the Mayor or City Commissioner might designate. It seems equally clear that when the City Council passed the various ordinances in February, March, April, May, June and October, 1893, appropriating money to the different streets named in them, they never contemplated that one passed in the fall of 1894 would have priority over them, or any of them, merely because it was of later date. If they had desired to give this ordinance preference it must be assumed they would have said so in such language as could not have been misunderstood.

But it is urged with great force that the provision made for Saratoga street was special—was a particular appropriation of a part of this fund and therefore the Court should give effect to it. It is true that ordinance provides that the cost of the work contemplated is to be taken out of the unexpended balances of moneys appropriated for carrying out the provisions of ordinances No. 42, approved March 6th, 1893, and No. 102, approved May 1st, 1893. But when this ordinance was passed the City Council had already made appropriations out of the fund set apart for repaving the streets largely in excess of that sum. Ordinance No. 42 appropriated the sum of sixty-two thousand dollars, *or so much thereof as may be necessary*, to defray the costs of the paving of the street therein named, and No. 102 appro-

priated eight thousand dollars, *or so much thereof as may be necessary*, to the street mentioned in it.   Each only appropriated *so much as was necessary*, fixing the maximum that could be used, and directed the Commissioners of Finance " to sell from time to time, *as may be requisite*, bonds for this purpose."   A great many ordinances were passed after Nos. 42 and 102, and some were passed after the work provided for in them was completed.   The one for repaving part of Park avenue appropriated seventy-five thousand dollars, or so much thereof as may be necessary,—" said amount to be taken from any money in the six-million loan for repaving streets not otherwise appropriated;" and the one for repaving Clay street appropriated fifteen thousand dollars, or so much thereof as may be necessary—" said amount to be provided for and *taken from any unexpended balances* not otherwise appropriated for the repaving of streets out of the six-million loan."   And others were passed, subsequent to No. 42 and No. 102 and prior to the one now before us, in such terms and for such amounts as appropriated all of the fund at the disposal of the City Council for the purpose.

The City Council could undoubtedly repeal this or any other of the unexecuted ordinances passed by them.   This case is not similar to that of *Pumphrey* v. *Mayor, etc., of Baltimore*, 47 Md. 145.   There an Act of the Legislature had been passed which " *directed and required*" the city to take charge of the bridge in question, whilst here it is in the discretion  of the City Council to determine which streets shall be improved.   They are necessarily better able to determine which streets are in most need of these improvements than the Court.   If it was their intention to repave Saratoga street to the exclusion of the others, they can yet say so by a proper ordinance, but they, not the Court, must determine which streets must be improved with the unexpended balances on hand.

Most of what we have said above is applicable to the injunction case as well as this, and we need only add, what

we have frequently said, that the remedy by *mandamus* is not one which is accorded *ex debito justitiae*, and the right sought to be enforced must be clear and unequivocal, which certainly cannot be said to be so in this case.

The *mandamus* should have been refused and the judgment will therefore be reversed without *procedendo*.

> *Judgment reversed, without procedendo, with costs to the appellant.*

(Decided December 6th, 1895.)