# CATHERINE B. C. THOMAS ET AL.

## vs.

# ISAAC S. FIELD ET AL.

*Baltimore City—Ordinance of Estimates—Powers of School Board.*

The provision of the ordinance of estimates of the Mayor and City Council of Baltimore for the year 1922: "Allowance of fund to the Board of School Commissioners to be used in their discretion solely for the purpose of equalizing salaries of secondary teachers on the basis of equal pay for equal work without distinction as to sex or color," left it to the discretion of such board whether the fund thereby appropriated should or should not be used.                    pp. 135-141

The School Board of Baltimore City being given, by the city charter, the power to fix the salaries of all teachers, *held* that a provision in the ordinance of estimates of the Mayor and City Council should not be construed as interfering with the board's discretion in this respect, in the absence of a clear, unequivocal and unmistakable manifestation of an intention to that effect, a repeal by implication not being favored by the courts.                                                   p. 136

Citizens and taxpayers have such an interest in the subject matter as to entitle them to maintain a mandamus proceeding to determine the power of the school board of a municipality to refuse to utilize a fund appropriated for its use for a particular purpose.                                                    p. 141

*Decided March 16th, 1923.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

Mandamus proceeding by Catherine B. C. Thomas and others, against Isaac S. Field and others, constituting the

Board of School Commissioners of the City of Baltimore. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*William Cabell Bruce* and *Jacob M. Moses,* for the appellants.

*A. Walter Kraus* and *Wirt A. Duvall, Jr., Assistant City Solicitors,* with whom was *Roland R. Marchant, City Solicitor,* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The Ordinance of Estimates of the Mayor and City Council of Baltimore for the year 1922 contains the following provision: "Allowance of fund to the Board of School Commissioners to be used in their discretion solely for the purpose of equalizing salaries of secondary teachers on the basis of equal pay for equal work without distinction as to sex or color." The Board of School Commissioners of Baltimore City, which will be hereafter referred to as the School Board, declined to apply the fund thus appropriated to the purpose indicated in the ordinance, or to expend it at all. Thereupon the appellants, all of whom are residents, and citizens, and some of whom are taxpayers, of the City of Baltimore, filed a petition in the Court of Common Pleas of Baltimore City, asking that court to issue a mandamus commanding the School Board of Baltimore City "to exercise the discretion vested in them as aforesaid and to apply the said sum of $40,525.80 to the equalization of the present salaries of said secondary teachers on the basis of equal pay for equal work, without distinction as to sex or color." The respondents, the appellees in this case, filed an answer to that petition in which, after denying the correctness of the legal conclusions upon which the petition rested, and calling for proof of its

allegations of fact, they said: "Under Section 99 of the City Charter (Edition of 1915), the Board of School Commissioners of Baltimore City, is given absolute discretion in the matter of fixing the salaries of all officers, teachers, secretaries, clerks and employees of said board, the only restriction upon said power being that said salaries, in the aggregate, shall not exceed the amount appropriated therefor in the annual Ordinance of Estimates; that the adoption or rejection of the so-called principle of equal pay for equal work in the administration of the public schools of Baltimore City is a matter committed solely to the discretion of these defendants and that mandamus will not lie to compel them to adopt said principle in the management of said public schools; that under the law, as it exists, no such appropriation item can be mandatory in its nature and that even if this were not true, there was no attempt on the part of the Board of Estimates or the Mayor and City Council of Baltimore to make this item mandatory, as will fully appear by reference to the section of said ordinance appropriating said fund, which specifically states that said fund is to be applied in the discretion of the Board of School Commissioners." They also denied that the appellants had any right to maintain the action, on the ground that they had no interest in its subject matter. A demurrer filed to that answer was overruled by the court, and the petition dismissed. From that order the present appeal was taken.

The principal question presented by the appeal is whether that provision of the Ordinance of Estimates to which we have referred was mandatory in its nature and amounted to a command to the School Board to apply the fund appropriated to the equalization of the salaries of secondary teachers in Baltimore City, or whether it gave them the right to decide, in their discretion, whether it should or should not be so applied. Another question raised by the pleadings in the case is whether the Mayor and City Council of Baltimore, hereinafter referred to as the Mayor and City Council, had

the power to adopt an ordinance carrying such a command, but that question can only become relevant in the event that it is decided that the direction to the School Board as to the expenditure of the fund is mandatory. For if the right to use it or not to use it was committed to their discretion, obviously the court had no power to review the manner in which they exercised that discretion. *Miles* v. *Bradford,* 22 Md. 170; *Devin* v. *Belt,* 70 Md. 354; *McCrea* v. *Roberts,* 89 Md. 250.

Before considering the question first stated, we will advert briefly to the circumstances out of which it grows, and refer to such parts of the several ordinances and statutes defining the relative powers and duties of the Board of Estimates, the School Board, and the Mayor and City Council, as relate to the question before us.

In addition to what has been stated above, the appellants in their petition allege: "That, for some years, a persistent effort, attended by only a partial and fluctuating measure of success, was made by the public school teachers of Baltimore City, and a large body of citizens of said city, in sympathy with their just and generous aspirations, to secure the equalization of the salaries, payable to the public school teachers of said city, upon the fundamental principle of equal pay for equal work, without distinction as to sex or color; and that this effort resulted in the actual adoption and application of that principle by the Mayor and City Council of Baltimore, and its Board of School Commissioners, so far as the public schools of Baltimore City, other than its secondary schools, viz., The Teachers' Training Schools, The Eastern High School, The Western High School, The Colored Teachers' Training School and the Colored High School, were concerned; and that finally the Mayor and City Council of Baltimore, acting through its proper agencies, The Board of Estimates and the City Council, made the necessary provision for the application of said principle even to said secondary schools, in the annual Ordinance of Estimates of the Mayor and City Council of Baltimore for the year 1922

(Ordinance No. 663); which was approved on the 19th day of December, in the year 1921, by appropriating to the Board of School Commissioners of Baltimore City, the sum of forty thousand five hundred and twenty-five dollars and eighty cents ($40,525.80)."

The Board of School Commissioners, instead of applying the fund to the equalization of the salaries of the teachers in the secondary schools, approved and adopted the following report of its Committee on Rules: "Special fund in the budget for 1922 for 'Equalization of Salaries.' In pursuance of the authority delegated by the board, the committee has been considering the adjustment of the total salary allowance in the budget for 1922 to the individual salaries of all the teachers, principals and other officials of the school system; and in this connection study has been given to the special fund of $40,525.80 added to the budget as an 'Allowance to the Board of School Commissioners to be used in their discretion solely for the purpose of equalizing salaries of secondary teachers without distinction of sex or color.' As this amount of money is entirely inadequate to accomplish the equalization intended, and as the School Board's carefully prepared provision for gradual 'equalization,' combined with certain special salary adjustments and the raising of the various salary maxima, particularly the elementary teachers' maximum, was stricken from the budget, the committee recommends that the Board of School Comissioners shall exercise its discretion by not undertaking any distribution whatever of this 'equalization fund.'" In its answer, in explaining that action, it asserts that the secondary teachers employed in the public schools of Baltimore City have no just cause to complain of the manner in which the appellee has dealt with them in regard to increasing their salaries, and further answering it says: "That from the year 1918 to the year 1922 they have allowed increases in the salaries of said secondary teachers (except in the case of principals), amounting to at least one hundred per cent., and they attach hereto,

as part hereof, a schedule showing the salaries allowed the various groups into which said secondary teachers are divided, covering the years 1918, 1919, 1920, 1921 and 1922."

*Section* 99 *of the Revised Charter of Baltimore City* (1915) in part provides:

> "There shall be a Department of Education of the Mayor and City Council of Baltimore. The head of said department shall consist of a Board of School Commissioners composed of nine persons, who shall serve without pay, and who shall be appointed by the Mayor in the mode prescribed in section 25 of this Article, and removable as therein provided. * * * The salary of all officers, teachers, secretaries, clerks and employees shall be fixed by said Board, not to exceed in the aggregate the amount appropriated by ordinance."

Under *Section* 6, *Sub-section* 22, the Mayor and City Council are given full power and authority

> "to establish in the City of Baltimore, in conformity with the provisions of this Article, a system of free public schools. * * * To levy and collect, upon the assessable property in the City of Baltimore as other taxes are levied and collected, such amount of taxes as may be necessary to defray all expenses incurred for educational purposes."

By *Section* 36, *Ibid.*, it is provided:

> "The Board of Estimates shall be the head of the third Sub-Department of Finance, and shall consist of the Mayor, City Solicitor, Comptroller, President of the Second Branch City Council and President of the Board of Public Improvements. * * * The said Board shall have power at any time to summon before it the heads of the departments and sub-departments and all municipal officers and special commissions or boards. The said Board shall annually, between the first day of October and the first day of November, meet, and

by an affirmative vote of a majority of all the members make out the following three lists of moneys to be appropriated by the City Council for the next ensuing year: First, a list to be known as the 'Departmental Estimates' of the amounts estimated to be required to pay the expenses of conducting the public business for the next ensuing fiscal year, including the expenditures for the City Council for the salaries of its members, officers and expenses; said list shall be prepared in such detail as to the aggregate sum and the items thereof allowed to the two Branches of the City Council, each department, sub-department, municipal officers not embraced in a department and special commissioners and boards as the said Board shall deem advisable. In order to enable said Board to make such list, the Presidents of the two Branches of the City Council, the heads of the departments, heads of sub-departments, municipal officers not embraced in a department, and special commissioners or boards shall, at least thirty days before the said list is hereby required to be made, send to the said Board in writing estimates of the amounts needed for the conduct, respectively, of the City Council, departments, sub-departments, municipal officers not embraced in a department, commissioners or boards for the next ensuing fiscal year. * * * The said estimates shall specify, in detail, the objects thereof, and the items required for the expenses of the City Council and the respective departments, sub-departments, municipal officers not embraced in a department, and special commissioners or boards, as aforesaid, including a statement of each of the salaries of the members of the City Council and its officers and clerks, and the salaries of the deputies, assistants, clerks, employees and subordinates in each department, sub-department, municipal office or special commission or board."

It then provides that an ordinance shall be drafted for submission to the City Council providing appropriations

sufficient to meet the amounts called for by the estimates thus
made, and that when the ordinance thus submitted shall have
been adopted by the City Council and approved by the Mayor
it shall be known as the Ordinance of Estimates, and "said
several sums shall be and become appropriated, after the be-
ginning of the next ensuing fiscal year, for the several pur-
poses therein named, to be used by the City Council, depart-
ments, sub-departments, municipal officers not embraced in a
department, and special commissions or boards therein
named, and for no other purposes or uses whatever," and
also that no "appropriation provided for in said ordinance
shall be diverted or used under any circumstances *for any
purpose* than that named in said ordinance."

It was under the authority of the several statutes to which
we have referred, and under the circumstances narrated in
the pleadings from which we have quoted, that the Mayor and
City Council of Baltimore included in its Ordinance of Esti-
mates for the year 1922 the item which is the basis of this
proceeding.

Much of the very able argument addressed to the Court on
behalf of the appellants was directed to the proposition that
the Mayor and City Council have, by virtue of the Constitu-
tion of Maryland and laws passed in pursuance of powers
therein contained, the power to amend or repeal any provi-
sion of the city charter, except where such action is directly
prohibited, and that, therefore, it had the power to repeal or
amend that provision of the charter which confers upon the
Board of School Commissioners of Baltimore City the right
to fix the salaries of the teachers in the public schools of Bal-
timore City.  But, as we have already stated, that question
can only come before us when it appears that the Mayor and
City Council have attempted to exercise such a power, and if
no such attempt is made it cannot come before us at all.

We will therefore revert to the question first stated, which
is in effect this, did the following language of the Ordinance
of Estimates: "Allowance of fund to the Board of School
Commissioners to be used in their discretion solely for the

purpose of equalizing salaries of secondary teachers on the basis of equal pay for equal work without distinction as to sex or color" mean that the School Board was to exercise its discretion as to the manner in which the fund was to be applied to the equalization of salaries, or did it mean that it should use its discretion as to whether it should be used for that purpose at all.

If the provision of the Ordinance of Estimates appropriating $40,525.80 for the equalization of the salaries of secondary teachers in the City of Baltimore, which will be referred to as the "equalization provision," means that the School Board must add that amount to the salaries of the teachers in the secondary schools, it is in irreconcilable conflict with Section 99 of the charter, which gives the School Board the power to fix the salaries of all teachers in Baltimore City without any limitation whatever, except that the aggregate of all the salaries so allowed must not exceed the appropriation, and, by implication, it would amount to a repeal or an amendment of that section, if the City Council had the power to so amend it. If the City Council had not the power to repeal or amend that section of the city charter, and if the "equalization provision" is in conflict therewith, then the "equalization provision" would necessarily fall. But if we assume, for the purposes of this opinion, and without so deciding, that the Mayor and City Council has the power to amend or to repeal that section of the charter, nevertheless we could not assume, without a clear, unequivocal, and unmistakeable manifestation of such an intention, that it meant to do either one thing or the other. And if, by any fair and reasonable construction, the language of the "equalization provision" and of the ordinance can be given a meaning consistent with the continuance of the powers created by section 99 of the charter, such a construction will be adopted rather than one which would tend to strike down, to lessen or to impair those powers. For, as was said by JUDGE PATTISON in *McEvoy* v. *Baltimore*, 126 Md. 120: "It is well settled that

a repeal by implication is not favored by the courts, and if by a reasonable construction the two provisions may be made to stand together they will be harmonized. It is only when they are repugnant and plainly inconsistent one with the other that there is a repeal by implication. *Webb* v. *Ridgely,* 38 Md. 364; *Yunger* v. *State,* 78 Md. 575; *Mining Co.* v. *C. & P. R. R. Co.,* 81 Md. 35; *Prince George's Co.* v. *Laurel,* 51 Md. 457; *School Commissioners* v. *Henkel,* 117 Md. 97; *Mayor and City Council of Baltimore* v. *Davis,* 120 Md. 405."

The charter of Baltimore City cannot be considered as a mere collection of local laws, loosely strung together with no definite coherence or interrelation, but it is, and must be regarded as, a single act, providing a complete and entire plan for the complex and intricate government of a great municipality, and each and every part of it bears a definite and often necessary relation to the whole as well as to every other part. And even though the power to alter and amend it, so as to meet exigencies due to changed conditions, were lodged in some body such as a city council, it would not be presumed that such a body exercised that power, in such a manner as to disturb the delicate adjustments and relations betwen the several departments going to make up the city government, or to effect some fundamental change in the charter, unless it manifested its intention to do that in the clearest and most express terms.

These principles apply with peculiar force to the facts involved in this proceeding. The people of Baltimore have in their charter provided with the most meticulous care for the selection of a School Board entirely free from sectarian, ecclesiastical or political influence or prejudices, composed of citizens of the city, held in general esteem for their character, intelligence and learning, and to that board they have committed the management of their schools. The board thus selected is furnished with such assistance and devices as are necessary to acquire a comprehensive and detailed knowledge

of the needs of the public school system of Baltimore City, its resources and its obligations. Because they have at hand information relevant to the various administrative matters which come before them, and because of their knowledge and experience in the special work of the board, the members of the School Board are better able to deal intelligently with such matters as come before it and dispose of them, to the best interest of the municipality and the patrons of the schools, than would any other officials not possessing similar information, knowledge and experience. Or to state it more tersely, the School Board, because of its special facilities, is naturally in a better position to deal intelligently with school matters than any other agency not having those or like advantages.

The Board of Estimates, on the other hand, has entirely different functions. It is composed of the principal officers of the municipality, and three of its five members are elected by, and therefore directly responsible, to the people. It is the "head of the third Sub-Department of Finance" and its main function is "to make out three lists of moneys to be appropriated by the City Council" for each fiscal year. In order that it may discharge that duty properly it is given certain broad and comprehensive powers. Thus it may summon before it the heads of the several departments, and sub-departments of the city government, and all its municipal officers and boards, and to facilitate its work the head of each department, and sub-department, the presidents of the two branches of the City Council, municipal officers not included in a department, and commissioners and boards, are required, thirty days before said lists are required to be made, to send to the board a written estimate of the amounts needed for the conduct respectively of their several boards, departments and offices for the ensuing fiscal year. One of these lists is known as the departmental estimates list, and contains "the amounts estimated to be required to pay the expenses of conducting the public business" of the city for the next ensuing fiscal year.

The Mayor and City Council are empowered by section 218 of the charter to pass all ordinances necessary to give effect and operation to the powers vested in the corporation of the City of Baltimore, and they are especially authorized to pass an ordinance of estimates, providing appropriations sufficient to meet the amounts called for by the three lists prepared by the Board of Estimates, and while they may reduce the amounts named in said ordinance with certain exceptions, they have no power to increase such amounts or to insert new items. But nowhere, in the enumeration of powers conferred upon the Mayor and City Council or upon the Board of Estimates, can we find any intention to clothe either of those departments with the powers or impose upon them the duties belonging to the other departments of the city government, and even if it were true (and we do not so decide) that the Mayor and City Council could by appropriate action amend the law regulating and defining the powers and duties of such other departments, they could only do so by some clear direct and explicit action, indicating a plain intention to change the law, and, in the absence of clear evidence of such an intention, it would be assumed, should such a construction be reasonable, that their acts were intended to be in harmony with, and in furtherance of, existing laws. *McEvoy* v. *Baltimore, supra; Smyrk* v. *Sharp,* 82 Md. 104; *Cumberland* v. *Magruder,* 34 Md. 381; *Garritee* v. *Baltimore,* 53 Md. 422; *Snowden* v. *State,* 69 Md. 203.

Applying these principles to the facts before us, we cannot agree with the contention, so forcibly presented by the counsel for the appellants, that the language of the "equalization provision" indicates clearly and unequivocally an intention to require the School Board to expend the fund appropriated to the equalization of salaries, leaving to them only the right to pass upon the manner of its apportionment, and, in our opinion, it was intended to leave the question as to whether it should or should not be used in their discretion. Any other construction would necessarily make the provision conflict

with that provision of the charter which authorizes the School Board to fix the salaries of the teachers in the city schools, for, until it is amended, under the charter, that power undoubtedly rests with them, and not with the City Council or the Board of Estimates. It is true, the Board of Estimates can and does determine the aggregate amount to be allowed for teachers salaries, but that is a very different power from one which would authorize them to say what salary each teacher or any particular class of teachers should receive, and we know of no existing provision of law which requires the School Board to expend the entire amount so appropriated to the payment of such salaries, if in their judgment the needs of the system do not require it.

Since the charter provision referred to did authorize the School Board to fix the salaries of the teachers under its control, it necessarily clothed them with some discretion in the performance of that duty, and if the ordinance in question meant no more than to require them to spend the money appropriated, the use of the words "in their discretion," was meaningless and superfluous; while if, by the use of those words, they intended to allow them to decide under all the circumstances, with which they were so much more familiar than the Board of Estimates or the Mayor and City Council, whether it should or should not be applied to the purpose indicated, then their use in the ordinance was appropriate and proper.

And the conclusion that they did so intend is strengthened by contemplating the surrounding circumstances. The School Board not only had in its possession all the information necessary to enable its members to ascertain the needs and the requirements of the public school system of the city, but they had also the experience and the knowledge gained through service in that department of the city government necessary to any intelligent use of that information. And if the Board of Estimates and the Mayor and City Council, notwithstanding that the School Board was in a far better position to deal

wisely and judiciously with the proposition than they were, nevertheless intended to repudiate the judgment and discretion of the School Board and to substitute their own judgment and discretion therefor, they would have said so in less ambiguous terms and, since they did not so express themselves, we must assume that they were conscious that the School Board was in a better position to determine whether the expenditure of the fund would promote the general welfare of the school system than they were, and that for that reason they left the question as to whether it should or should not be used to their discretion.

From what has already been said it follows that the question of the power of the Mayor and City Council to pass an ordinance in conflict with the city charter is not before us, since there was no attempt in this case to exercise it, and it need not therefore be discussed.

The defence presented by the appellee, that the appellants had no right to maintain the action because they had no interest in its subject matter, is, we think, without merit. The right of citizens and taxpayers to maintain actions of this character has been so often declared by this Court that any extended citation of authorities seems unnecessary, but it is sufficient to refer to the case of *Hummelshime* v. *Hirsch,* 114 Md. 51, in which Judge Thomas, in a very careful and exhaustive opinion, collected and analyzed the decisions dealing with that question.

For the reasons stated the order appealed from will be affirmed.

*Order affirmed, with costs.*