## DONALD F. RODGERS *v.* WASHINGTON SUBURBAN SANITARY COMMISSION ET AL.

[No. 1242, September Term, 1975.]

*Decided September 16, 1976.*

The cause was argued before GILBERT, MENCHINE and MOORE, JJ.

*Joel I. Hoffman,* with whom was *Mark J. Wishner* on the brief, for appellant.

*Paul T. Sisson* and *J. Eugene Cleary* for appellee Washington Suburban Sanitary Commission. *Robert E.*

*Bullard,* with whom were *Bullard & Deutchman, P.A.* on the brief, for other appellee.

MENCHINE, J., delivered the opinion of the Court.

The Washington Suburban Sanitary Commission, (WSSC) a bi-county public agency having its genesis under Ch. 122 of the Acts of 1918, is charged generally with the management and control of the water supply, sewerage and drainage systems of Montgomery and Prince George's Counties.[1]

On September 19, 1973, WSSC, following orders of the Secretary of Health and Mental Hygiene, passed a resolution prescribing conditions and limitations upon new applicants for sanitary sewerage service into its systems in certain drainage basins in Montgomery and Prince George's Counties. Such conditions and limitations were made expressly applicable to the Rock Creek Basin in Montgomery County.

Donald F. Rodgers (Petitioner), a property owner within the Rock Creek Basin, whose property was being served by WSSC sewer facilities, filed an amended petition for the writ of mandamus against WSSC and others.[2] He alleged, *inter alia,* that WSSC had issued a sewer "hook up" permit in violation of its own resolution. The petition sought (a) to compel WSSC to withdraw its allegedly unlawful permit; (b) to enjoin it from completing the sewer "hook up" until the terms and conditions of the resolution had been met; and (c) to compel the WSSC to require the applicant for such permit to show entitlement to its issuance within the limitations prescribed by the resolution.

A preamble to the WSSC resolution (in part pertinent here) reads as follows:

> "WHEREAS, in view of the sewage flow figures, calculations and projections, including the

---

1. See Washington Suburban Sanitary District Code 1970, as amended.

2. The Commission, the individual commissioners, the general manager of the Commission, the secretary and the treasurer of the Commission, the owners of the lot as to which the permit had been issued and a building contractor allegedly engaged in the construction of a home thereon were joined in the petition.

instances of overflow in the transmission lines serving the Cabin John and Anacostia basins, and the imminent threat of creation of situations of over-capacity in the other basins mentioned herein if unrestricted additional sewage flow is permitted to be added to the current flows therein, the Commission finds and determines that for the immediate preservation and protection of the public health, safety and of the integrity of the Commission's system, and consonant with the statutory premise that there be cooperation between this Commission and the governing officials of Montgomery County in such matters, the within Resolution is adopted, to be effective immediately. The provisions of this Resolution are required to be adopted, and to be effective immediately upon such adoption."

The body of the resolution (in part pertinent here) reads as follows:

"2. In the Rock Creek, Little Falls and Seneca Basins, and in minor basins and stream valleys elsewhere located which are tributary to the systems within said major basins (but not within the Category A basin, above), hookups, as defined in Paragraph A.3, above shall not be made, but shall be deferred pending further order of the Commission, for any structure for which a County building permit had not been issued on or before September 13, 1973. An applicant for a hookup within the said basins must exhibit a signed copy of such building permit, clearly showing the date of issuance thereof on or before September 13, 1973, or the application for hookup will be deferred under the provisions of this Resolution.

3. Exceptions to the aforegoing restrictions on hookups may be granted by the Commission (i) upon written request of the Montgomery County

Department of Environmental Protection which is based upon, and contains findings of, necessity for a hookup to alleviate a public health hazard, or (ii) to provide sewer service for a public service building approved by the Montgomery County Council, upon procedures, however, specified in the August 16, 1973 Anacostia Basin Order and Cabin John Basin Order of the Secretary of Health and Mental Hygiene, or (iii) for an individually owned single family dwelling unit where the applicant for the hookup certifies (and demonstrates by written instrument) that he was on or before August 16, 1973 the owner or contract purchaser of the lot upon which the single family dwelling unit will be constructed and that he will be the occupant of the dwelling unit to be constructed thereon. These exceptions carry forward and permit implementation of the provisions for such exceptions contained in the August 16, 1973 All Other Basins Order of the Secretary of Health and Mental Hygiene, as well as a recognition by both this Commission and the Montgomery County Council of the public purposes and necessities for such exceptions."

All respondents demurred to the amended petition. The trial judge sustained all demurrers without leave to amend. He did so upon the limited holding that "the plaintiff is not an 'aggrieved party' under Maryland law and as such is not entitled to maintain this action." We disagree with that holding and shall reverse and remand for further proceedings. We stress that our decision relates exclusively to the "standing" issue.

Judge Delaplaine, in the course of a scholarly opinion for the Court of Appeals of Maryland, in *Pressman v. Elgin*, 187 Md. 446, 50 A. 2d 560 (1947), with brevity but with great clarity traced the history of the action of mandamus and declared the rule governing its availability to a private citizen at 450-51 [563]:

"Mandamus is a remedy which comes down to us

from the past when the Judges of the Court of the King's Bench issued the writ or not as they saw fit. According to the theory of the common law, the King was the fountain of justice, and where the laws did not afford a remedy and enable the individual to obtain his right by the regular forms of judicial proceedings, the prerogative powers of the sovereign were sought to supplement the ordinary judicial powers of the Court. Thus mandamus, like *habeas corpus*, became known as a prerogative writ because it was issued only by exercise of the extraordinary power of the Crown on proper cause shown. Today, however, the theory that mandamus is a prerogative writ no longer has force in America. In *Union Pacific R. Co. v. Hall*, 91 U. S. 343, 23 L. Ed. 428, 432, the United States Supreme Court observed that a private citizen may apply for mandamus in his own name without the intervention of any public official to enforce a public duty not owing to the government as such."

In *Liquor Stores Assn. v. Commrs.*, 171 Md. 426, 429, 189 A. 209, 210 (1937), it was said:

"The courts of the State will entertain jurisdiction of suits by citizens and taxpayers for the writ of mandamus, or that of injunction, to correct unlawful action by municipal officers, when the action may injuriously affect rights and property of the parties complaining. And according to past applications of the rule, the interest or injury which will support such a suit is broadly comprehensive. *Baltimore v. Gill,* 31 Md. 375, 395; *St. Mary's Industrial School v. Brown,* 45 Md. 310, 326; *Pumphrey v. Baltimore,* 47 Md. 145, 153, 28 Am. Rep. 446; *Konig v. Baltimore,* 128 Md. 465, 477, 97 A. 837; *Levering v. Park Commissioners,* 134 Md. 48, 59, 106 A. 176; *Thomas v. Field,* 143 Md. 128, 141, 122 A. 25; *Sun Cab Co. v. Cloud,* 162 Md. 419, 427, 159 A. 922; *Jones v. Gordy,* 169 Md. 173, 178,

180 A. 272. It may seem to have been slight in some instances."

The rule of those cases quite recently was restated in *Criminal Inj. Comp. Bd. v. Gould*, 273 Md. 486, 514, 331 A. 2d 55, 72 (1975), wherein it was said:

> "The office of mandamus, as generally used, is to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right."

The WSSC resolution, *supra*, explicitly provided that in the Rock Creek Basin sewer no "hookup" was permissible for "any structure for which a County building permit had not been issued on or before September 13, 1973." The pertinent exception to that prohibition was limited to a "hookup" for "an individually owned single family dwelling unit where the applicant for the hookup certifies (and demonstrates by written instrument) that he was on or before August 16, 1973 the owner or contract purchaser of the lot upon which the single family dwelling unit will be constructed and that he will be the occupant of the dwelling unit to be constructed thereon." The petition for mandamus alleged that the factual prerequisites to the grant of a permit under that exception were not shown.

The preamble of the resolution, *supra*, makes it crystal clear that its purpose was to prevent ". . . the imminent threat of creation of situations of over-capacity in the [Rock Creek basin] if unrestricted additional sewer flow is permitted to be added to the current flow therein." It makes clear as well that the purpose of the resolution was to provide for the "immediate preservation and protection of the public health, safety and of the integrity of the Commission's system."

In sum, the WSSC resolution (a) imposed an imperative duty upon the Commission to limit subsequent sewer

"hookups" into the sewer lines serving the Rock Creek basin and (b) was intended to benefit the public generally and particularly those members of the public — of whom petitioner allegedly was a member — currently connected to such sewer facility.

We find the language of *Heghinian v. Ford,* 209 Md. 113, 117, 120 A. 2d 339, 341 (1956), to have particular application here:

> "*Mandamus* was originally a prerogative writ and a private citizen could not obtain it to compel performance of a public duty unless he had an individual and separate interest in the matter, not common to other citizens, and it was necessary for a government law officer to move for the *mandamus.* Later the prevailing view came to be, generally and in Maryland, and long has been, that '* * * private citizens may move for *mandamus,* to enforce a public duty, not due to the government as such, without the intervention of the government law officer.' *Pumphrey v. Baltimore,* 47 Md. 145, 154. The rationale of this rule seems to be that if the duty is one in which the public, or a segment of the public, has an interest, an individual who is a member of the group which has such an interest may act on behalf of that group by virtue of the interest he shares with the others. It is still true, nevertheless, that to be entitled to the issuance of the writ of *mandamus,* the relator must have a real interest in the subject matter of the suit whether it be his alone or shared by a great number of people, and the respondent must owe him, or the group of which he is a member, an imperative duty. *Pressman v. Elgin,* 187 Md. 446, 452; *Buchholtz v. Hill,* 178 Md. 280, 288. The cases in which this Court has held that the writ should issue in favor of an individual who shared an interest with the general public, show that the duty which is to be compelled is a duty owed to the public."

The petition for mandamus shows upon its face that WSSC was charged with an imperative duty and that the petitioner was a member of the public who shared, with others, a real interest in the subject matter of the suit.

We stress that our decision is quite narrow. We hold only that petitioner had standing to initiate an action of mandamus. We do not in any respect address the merits of the cause.

*Judgment reversed.*
*Appellees to pay the costs.*