BALTIMORE RETAIL LIQUOR PACKAGE STORES
ASSOCIATION ET AL. *v.* BOARD OF LICENSE
COMMISSIONERS ET AL.

[No. 79, October Term, 1936.]

*Decided January 14th, 1937.*

The cause was argued before BOND, C. J., PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Morton M. Robinson,* with whom were *Herbert Samuelson* and *Jerome Robinson* on the brief, for the appellants.

*Randolph Barton, Jr.,* and *Lee S. Meyer,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The case is one of construction of a statute. Section 21 of article 2B of the Code (Supp. 1935), enacted at the Extraordinary Session of the General Assembly in 1933, chapter 2, on the subject of licenses for the sale of alcoholic beverages, provides that no more than one license, except by way of renewal, shall be issued to any person for the use of any corporation in any city of the State, and no more than one for the same premises, "provided that in Baltimore City any * * * corporation operating more than one restaurant or hotel or more than one re-

tail drug store at the time of the passage of this Article shall be entitled to obtain a license for each such place of business upon the filing of a separate application and the payment of a separate fee for each place of business." The Read Company, at the time of the enactment, maintained more than one retail drug store in the city, and obtained a license for each. A Peoples Service Drug Stores, Inc., then maintained five stores, but did not apply for licenses in 1933 or 1934. In September, 1935, however, shortly before a sale of its stores to the Read Company, the Peoples Stores obtained licenses for all of them, and transferred the licenses to the Read Company. In 1936 the Read Company applied for renewals of these licenses, along with those of its original stores, and the present appellants, owners of licensed retail stores for sale of liquor in packages, and, as to the individual complainants, taxpayers of the city, protested the renewal of the purchased licenses, on the ground that the statute permitted any one drug store operator to have licenses only for stores operated at the time of the enactment in 1933, and their protest having been overruled, and the purchased licenses renewed, filed a petition for the writ of mandamus to compel the License Commissioners to procure a surrender or revocation of them. The Read Company was permitted to intervene as a respondent. The question of law was submitted by all parties on a case stated under section 133 of article 75 of the Code, and on it the trial court denied the writ, dismissing the petition for it. The appeal is from that order.

At the argument, a question was raised of the right of the petitioners to invoke the process of the court to enforce observance of the law by the administrative body, and while counsel for both parties urge that their question of construction of the law be decided, nevertheless, and there is a reason for deciding it, the court is of the opinion that the question of right to sue having been raised it cannot be passed unnoticed. Under the decisions of this court the complainants would not be entitled to the writ of mandamus even if the commissioners were

found to have acted on an erroneous construction of the law; and for that reason the decision below must be affirmed.

The courts of the State will entertain jurisdiction of suits by citizens and taxpayers for the writ of mandamus, or that of injunction, to correct unlawful action by municipal officers, when the action may injuriously affect rights and property of the parties complaining. And according to past applications of the rule, the interest or injury which will support such a suit is broadly comprehensive. *Baltimore v. Gill*, 31 Md. 375, 395; *St. Mary's Industrial School v. Brown*, 45 Md. 310, 326; *Pumphrey v. Baltimore*, 47 Md. 145, 153, 28 Am. Rep. 446; *Konig v. Baltimore*, 128 Md. 465, 477, 97 A. 837; *Levering v. Park Commissioners*, 134 Md. 48, 59, 106 A. 176; *Thomas v. Field*, 143 Md. 128, 141, 122 A. 25; *Sun Cab Co. v. Cloud*, 162 Md. 419, 427, 159 A. 922; *Jones v. Gordy*, 169 Md. 173, 178, 180 A. 272. It may seem to have been slight in some instances. And in a case somewhat similar to the present one, no objection to the parties having been raised, their right or lack of right was not considered. *Maryland State Funeral Directors' Assn. v. State Board*, 150 Md. 294, 133 A. 62. But the court conceives the rule as stated to be unchanged. *Sun Cab Co. v. Cloud, supra*. In this instance, there is no levy of taxes or outlay of public money to affect the petitioners as taxpayers. As holders of liquor licenses they have no franchises or exclusive privileges to be affected; they have only permits to engage in the business of selling alcoholic liquors. *Fell v. State*, 42 Md. 71, 89, 20 Am. Rep. 83; *Clark v. Tower*, 104 Md. 175, 181, 65 A. 3; *Ruggles v. State*, 120 Md. 553, 560, 87 A. 1080; section 19 of the statute, Act of 1933, chapter 2. The interest which impels them to sue is only that of business advantage in keeping down the number of their competitors. They are not entitled in law to any advantage in a restricted number; it was not within the purpose of the statute to restrict competition for the benefit of any licensee; and in the accomplishment of the purpose which was sought, whatever it may have been,

the petitioners are entirely without special interest. Applying by an agency, in the association named, would be open to the further objection that parties cannot sue by agents. *Ness v. Baltimore*, 162 Md. 529, 538, 160 A. 8.

In a case for the construction of a statute, it is a mistake to refer the court to reports of the intention of the draftsmen, for the law is that which would be understood by the Legislature in its enactment and by the people for whose regulation it is provided. "The intention of the draftsman of an act, or the individual members of the legislature who voted for and passed it, if not properly expressed in the act, it is admitted, has nothing to do with its construction; the only just rule of construction, especially among a free people, is the meaning of the law as expressed to those to whom it is prescribed, and who are to be governed by it." *Keyport & M. P. Steamboat Co. v. Farmers' Transp. Co.*, 18 N. J. Eq. 13, 24; *Richmond v. Supervisors*, 83 Va. 204, 212, 2 S. E. 26; *People v. Smith*, 78 Hun. 179, 181, 28 N. Y. S. 912; *Sutherland, Statutory Construction*, (2nd Ed.) sec. 470. The court has therefore excluded from consideration all mention of the intention of the draftsmen of this act.

Section 21 does not completely except restaurants, hotels, and drug stores from the general prohibition against the issue of more than one license to any person, as if the words of the provision were: No more than one license shall be issued to any person except operators of restaurants, hotels and drug stores; or, no more than one license shall be issued to any one person, except that any number may be issued to operators of restaurants, hotels, and drug stores. The exception is circumscribed, so that the general prohibition stands as to all, except that operators of more than one restaurant, hotel, or drug store at the time are entitled to obtain a license for each such place of businees. Those existing operators may have licenses for their existing places of business, and the section stops with that provision for existing stores. No reference is made specifically to licenses for additional stores acquired by any one of the operators subsequently,

by assignment from another operator. And for the petitioners, on the one side, it is argued that the words and meaning of the section being plain, they are to be given their natural effect without interference by the courts by assumption of a purpose at variance with them, and adaptation of the words to the purpose; and that when the Legislature has specified an exception to its general prohibition, that, and that only, can constitute the exception, the prohibition remaining applicable beyond it, and not subject to further judicial exception or modification. *Alexander v. Worthington*, 5 Md. 471, 485; *Maxwell v. State*, 40 Md. 273, 291, 302; *State Tax Commission v. Harrington*, 126 Md. 157, 166, 94 A. 537; *Williams v. State*, 144 Md. 18, 21, 22, 123 A. 457. "It is said that the function of a proviso is that of limiting and qualifying the language of the statute, and not that of enlarging or extending the act or section of which it is a part, and that a proviso should always be construed with reference to the immediately preceding parts of the clause or section to which it is attached." *Wolf v. Bauereis*, 72 Md. 481, 485, 19 A. 1045, 1047. "The provision is in the nature of a proviso, and must be construed accordingly, by giving it a strict construction and restricting the exception within the limits which the language naturally imports." *Johns v. Hodges*, 62 Md. 525, 537. And on the side of the Read Company it is argued that the words of the section here are not so clear as to be insusceptible of judicial construction, and that the question of licenses for the stores subsequently acquired is to be settled by reference to other sections of the statute, especially the succeeding section, 22, on Transfers of Licenses, and by reference to a purpose which from a reading of the whole act it must be supposed that section 21 was intended to accomplish, and which, under the accepted rules of construction, should prevail even over the letter of the section if the letter reads to the contrary. *Baltimore v. Deegan,* 163 Md. 234, 238, 161 A. 282; *Jones v. Gordy,* 169 Md. 173, 184, 180 A. 272. "Now any one who contends that an Act of Parliament is not to be read literally must

be able to show one of two things; either that there is some other section which cuts down (or expands) its meaning, or else that the section itself is repugnant to the general purview of the Act." Jessel, M. R. in *Nuth v. Tamplin*, L. R. 8 Q. B. Div. 247, 253; *Sturges v. Crowninshield*, 4 Wheat, 122, 202, 4 L. Ed. 529; *Sutherland, Statutory Construction* (2nd Ed.) sec. 367.

Section 22, on Transfer of Licenses, in terms permits "any holder of a license" to transfer his place of business to some other location or to sell or assign his license and stock in trade to another person upon application to be dealt with by the commissioners as if it were a new one. The provision expresses no limitation upon the persons who may receive transfers; but it could not be contended that there are no limitations under the act. In sections 5 (11), 28, and 33 there are elaborate provisions to prevent the holding or control of retail licenses by manufacturers or wholesalers, and section 22 would not be construed to furnish an easy escape by permitting the ownership or control by purchase. The purpose manifested would require that it be construed in harmony with those sections, and be limited by them. *Cutty v. Carson*, 125 Md. 25, 33, 93 A. 302. Transfers would be permitted only to persons not denied a right to hold licenses. And if section 21, rightly construed, denies an operator of drug stores at the time of enactment the right to have issued to it licenses for more than the stores it then had, the denial would place a limitation upon the persons who might receive transfers of licenses under section 22. Section 22 would, then, only return the inquiry to the question at the beginning, that of construction of section 21.

Section 21 is entitled in the act itself, Two Licenses to Same Person in Same Town Prohibited. And to the general prohibition there are four exceptions expressed. The first is that concerning any person, firm, or corporation in Baltimore City operating more than one restaurant, hotel, or drug store at the time of the passage of the act. A license for each such store may be obtained by that person, firm, or corporation. The second provides "that the

provision of Section 21, restricting a licensee to one license" shall not apply to Charles and Howard Counties, for licensees in which a special arrangement is prescribed. The third provides that the holder of a wholesale license may obtain a retail beer, wine, and liquor license for a separate place of business, keeping separate books of account for each place. The fourth exception provides that any licensee in Calvert County may obtain licenses of two kinds.

The court sees no room for doubt that the general restriction which the section was designed to impose is one upon licensees, upon the holding of numerous licenses by single licensees. That is the title of the section, and the description of purpose in the second exception, "restricting a license to one licensee," and it is the purport of the whole section. Ownership of more than one license by any person, firm, or corporation other than those named in the excepting clauses, whether by assignment or otherwise, is prohibited. For the Read Company it is argued that the intention in the first exception was to provide for the licensing of all existing drug stores, although more than one might be operated by single operators, and not to disqualify single operators from accumulating additional licenses with additional stores purchased. But to this it might be replied that interpreting the exception as treating of restriction on stores operated at the time would seem to involve at least a shift from the direction and object of the main provision, which is concerned with ownership by persons. And it seems to the court somewhat inconsistent with a general purpose which the argument assumes for the statute, which is that of "preventing the evil of concentration of the liquor business in the hands of a few, or the existence of a dominant control in the hands of any manufacturer or dispenser of liquors," but at the same time, no likelihood of the objectionable concentration through restaurants, hotels, or drug stores being seen, to except those establishments from the general prohibition. The argument, necessarily allowing some application to the limitation in

the words, "retail drug store at the time of the passage of this Act," and, "license for each such place of business," grants that only the drug stores then operated with other stores by one operator could subsequently be bought up and licensed by another. Manufacturers and wholesalers, against whom the argument supposes the section to be directed, are subjects of the special preventive measures in sections 5 (11), 21, 28, and 33, and this prohibition in section 21 has a wider application, to "any person," subject to the exceptions stated.

The absence of any expressed restriction in the excepting clause on the number of existing stores and licenses which single operators might obtain for them is relied on as showing that the number which might be included in single ownership in such establishments was not a matter of concern in the enactment, and that, in accordance with the legislative purpose, any number might subsequently be so concentrated in the hands of one operator—subject, as the argument is, to a requirement that the stores should have been existing at the time of passage. But the absence of express numerical limitation might be explained plausibly by another assumption: That the existing number of stores owned in groups or chains may have been known to the legislators and accepted as justly requiring exception from the general prohibition without making any further departure from it, or, in other words, as the petitioners contend, that the Legislature may have intended to provide for existing business, as they were at the time of the passage of the new licensing act, organized without reference to selling liquor, but to prevent organization subsequently to accumulate liquor licenses in single ownership and power through any form of business. It is a purpose which would seem in accord with the letter of the section, "that in Baltimore City any person, firm or corporation operating more than one * * * drug store at the time of the passage of this Article shall be entitled to obtain a license for each such place of business." Code (Supp. 1935) art. 2B, sec. 21. This being a limited exception to a pro-

hibition against any one operator's holding more than one license, if the court should take the exception as liberating the operators of drug stores from the prohibition any further than the specified exception goes, the limits of the judicial function would seem to be transgressed. It may be true that none of the detriment intended to be reached by the prohibition would result from allowing multiplication of licensed places in the hands of one drug store operator by purchase, and that logically the exception should be enlarged for this purpose, but if so the fact would be for the consideration of the Legislature. The court forms no opinion on it.

On the merits of the question, therefore, this court takes a view differing from that of the trial court. A question of unconstitutional discrimination in the provision, section 21, has been merely suggested, with a statement that it was not pressed. The court has considered only the construction of the provision as if it were valid, and forms no opinion on the question of constitutionality. As the appellants are found to have had no right to the relief prayed, the order must be affirmed.

*Order affirmed, with costs.*