PERRY, APPELLANT, v. LUDING, ET AL., RESPONDENTS.

No. 8931

Submitted February 2, 1950. Decided April 13, 1950.

217 Pac. (2d) 207

Mr. T. H. MacDonald, Kalispell, Mr. James E. Murphy, Kalispell, for appellant. Both argued orally.

Messrs. Rognlien and Murray, Kalispell, and Mr. James B. O'Flynn, of Kalispell, for respondents. Mr. Murray and Mr. O'Flynn argued orally.

Ralph J. Anderson, Helena, amicus curiae, on petition for rehearing.

MR. CHIEF JUSTICE ADAIR:

This is a suit to enjoin the transfer of certain retail beer and

liquor licenses issued by the Montana liquor control board and to have the licenses adjudged to be the property of the plaintiff Richard Perry, also known as G. Richard Perry. The appeal is by plaintiff from a judgment of dismissal entered after trial.

During the years 1942 to 1945, inclusive, and for the first two months of the year 1946, the plaintiff G. Richard Perry was continuously employed and resided in the state of Washington.

*"The Club Bar & Cafe."* In March 1946 plaintiff quit his job at the shipyards in Tacoma, Washington, and removed to the boom town of Martin City, which was then springing up in Flathead county, Montana, near the site of the Hungry Horse dam being constructed by the federal government. Since coming to Flathead county plaintiff has been engaged, either individually or as a partner with others, in owning and operating a bar and restaurant formerly called "The Hungry Horse Tavern & Cafe" but now known as "The Club Bar & Cafe" located on leased land described as lot four in block one south in the town of Martin City.

At the outset plaintiff's partner in such operations was Edward Malvey in whose name the state beer and liquor licenses for the premises were issued. In the summer of 1946 Malvey made a written assignment of all his right, title and interest in such licenses to plaintiff's father, O. W. Perry. Thereafter new licenses for the premises were issued by the Montana liquor control board, hereinafter called the board, in the name of O. W. Perry, as owner, and eventually the names of both the plaintiff and the father appeared thereon.

*Registration Card.* On September 20, 1946, for the purpose of qualifying as a registered voter in Flathead county in the state of Montana, plaintiff subscribed and swore to a registration card filed in the office of the county clerk and recorder of Flathead county which inter alia, recites: "Name G. Richard Perry * * * Age 38 * * * Occupation Cafe & Bar Operator * * * Length of time you have lived in * * State 7 mo. County 7 mo. * * * Place last registered, Tacoma, Washington. G. Rich-

ard Perry being duly sworn says * * * the several statements therein contained affecting my qualifications as an elector are true.''

''*Skip's Bar.*'' One Ross M. Cameron, also called ''Skip'' Cameron, owned a building and its contents including a bar, fixtures, equipment, and stock of beer and liquor, which he operated under the name of ''Skip's Bar'' on leased land described as lot one in block three in the town of Martin City, pursuant to the authority of retail beer license No. 1433 and retail liquor license No. 1284 issued to him by the board. Cameron did not own the lot on which his building and bar were located but had only a year-to-year lease thereon from the owner of the land.

In May 1947 S. J. Barnes, C. E. Rand and plaintiff purchased the above business including the building and contents from Cameron who made and delivered to the purchasers (1) a bill of sale of his business, building, bar, fixtures and stock made in the names of the three purchasers, and (2) an assignment of his lease on the land whereon same was situate.

As part of the same transaction ''Skip'' Cameron also made a written assignment to plaintiff, *only,* of all his right, title and interest in the above numbered beer and liquor licenses theretofore issued to him by the board. The assignment of the licenses stated that it was subject to the approval of the board. The plaintiff Richard Perry filed such assignment of the licenses with the board, together with his written application for new licenses for the described premises stating therein that he made such application in the capacity of ''Owner.''

On June 20, 1947, the board approved the assignment from Cameron and plaintiff's application for new licenses and issued to plaintiff *only,* as owner, retail beer license No. 823 and retail liquor license No. 769. The liquor license so issued to the plaintiff Perry, *alone,* states that for the fiscal year beginning July 1, 1947, to June 30, 1948, inclusive, and subject to the provisions of the statutes of Montana and the rules and regulations of the board lawfully promulgated thereunder, the plaintiff ''is

authorized to sell liquor * * * at retail, only and solely in and from the premises located at Lot 1, Block 3—Martin City, Montana, Skip's Bar and at no other place until midnight of June 30, 1948, unless license is sooner revoked, cancelled or suspended. This license is non-transferable, directly or indirectly, except with the approval of the Board first had and specifically endorsed hereon in writing.''

Upon acquiring the described personal property from ''Skip'' Cameron the three purchasers,—Barnes, Rand and plaintiff set about improving the building and installing additional furniture and fixtures therein for bar purposes.

*''The Hub Bar.''* As the improvement work on the building neared completion the name of the bar was changed from ''Skip's Bar'' to ''The Hub Bar'' and the place was turned over to the defendant B. R. Luding to operate as ''acting manager.''

On August 23, 1947, the bar opened under its new name and under Luding's managership and from the start did a flourishing business.

*Irregular Operations.* Two or three weeks after ''The Hub Bar'' opened with Luding operating the establishment as ''acting manager,'' the chief inspector of the Montana liquor control board made an official inspection visit to Martin City under orders from the board to check the liquor licenses issued by the board against the stamps to sell liquor issued by the federal government to ascertain whether persons named as owners and operators in the state licenses correspond with those named as owners and operators in the federal stamps for the same premises.

The inspection of ''The Club Bar & Cafe'' showed: (1) Federal liquor stamp issued in the names of plaintiff and his father, O. W. Perry; (2) state liquor license issued in the name of the father, O. W. Perry, *alone;* and (3) business being operated by plaintiff, Richard Perry.

The inspection of ''The Hub Bar'' showed: (1) Federal liquor

stamp issued in the names of Barnes, Rand and the plaintiff Richard Perry; (2) state liquor license issued in the name of plaintiff *alone;* and (3) the bar being operated by the defendant B. R. Luding.

The inspector promptly informed the defendant Luding he could not "run on Mr. Perry's [plaintiff's] license." The inspector also informed the plaintiff Richard Perry that his name, as well as that of his father, must appear on the state liquor license for "The Club Bar & Cafe" which plaintiff was then operating, thus making the state liquor license issued for such premises conform to the owners and operators named in the federal liquor stamp therefor. The inspector further informed plaintiff that the state liquor license for "The Hub Bar" issued to plaintiff *alone* must be made to conform to the federal liquor stamp therefor which named Barnes and Rand in addition to plaintiff as owners and operators; that Luding could not operate "The Hub Bar" on the state liquor license issued to plaintiff *only;* that plaintiff could not hold state liquor licenses for the two bars, namely for "The Club Bar & Cafe" and "The Hub Bar" and that plaintiff "had to dispose of one, he could not have both." The inspector testified that upon being so advised plaintiff said that "he would sell the one in the Hub and stay with his father in the Club."

On September 22, 1947, and following the above inspection and check-up of the taverns, Barnes, Rand, the plaintiff Richard Perry, and the defendants, B. R. Luding and Val Donna Cox met in the back room of "The Club Bar & Cafe" then operated by plaintiff Richard Perry and his father, O. W. Perry, where various instruments in writing were made and signed including: (1) A bill of sale signed and acknowledged by Barnes, Rand and the plaintiff Richard Perry, as vendors and assignors, purporting to sell, transfer and assign unto the defendants B. R. Luding and Val Donna Cox, as vendees and assignees, for a consideration of $10 the business known as "The Hub Bar" formerly "Skip's Bar" including the fixtures, equipment, stock and also the retail beer and liquor licenses for its operation; (2)

a lease of *a portion of the building* in which "The Hub Bar" was situate, signed and acknowledged by Barnes, Rand and the plaintiff, Richard Perry, as lessors, and by the defendants, Luding and Cox, as lessees, demising and leasing to said lessees for one year from August 23, 1947, for a cash rent of $2,000 paid in advance, "The North 10 feet and the West Half of that certain building now situated and located on Lot 1, of Block 3, Martin City, Montana;" and (3) an assignment made out on a liquor control board form by plaintiff Richard Perry, *only*, as asssignor, to the defendants, Luding and Cox, as assignees, of all plaintiff's right, title and interest in retail beer license No. 832 and in retail liquor license No. 769, theretofore issued to the plaintiff, Richard Perry, *alone,* and a request, in writing, by plaintiff that the board approve the assignment. The assignment and request also bore the signatures of plaintiff's attorney and of C. E. Rand as witnesses to the execution of the instrument. The assignment and request were forwarded to the board accompanied by the written application of the defendants, Luding and Cox, for the issuance to them of new beer and liquor licenses for the premises.

On October 28, 1947, the board, granting plaintiff's request, approved the assignment which plaintiff had executed and the application of the assignees, Luding and Cox, for new licenses and issued to Luding and Cox in their names, a new retail beer license and a new retail liquor license for "The Hub Bar" and Luding and Cox, proceeding under such authority as named licensees, operated "The Hub Bar" until after August 23, 1948, the date whereon their lease, on the demised portion of the building, expired.

Before the expiration of the term of the aforesaid lease from Barnes, Rand and plaintiff, the defendants, Luding and Cox, attempted to obtain an additional five year lease on the demised property, offering to pay Barnes, Rand and plaintiff $150 per month rent therefor, but such offer was rejected, Barnes, Rand and plaintiff declining to enter into any new lease agreement, thus forcing the defendants, Luding and Cox, to vacate the

premises unless they saw fit to buy the property from Barnes, Rand and plaintiff, for the sum of $25,000, such price not including the land on which the building and bar are located to which land Barnes, Rand and plaintiff have never had any title.

The defendants, Luding and Cox, being either unable or unwilling to pay such amount for the building and bar, thereupon, and, about a month and a half before their lease was to expire, sought the board's consent to move their business to a different location in Martin City at the termination of their lease on the portion of the building so occupied by them and under their lease from Barnes, Rand and plaintiff.

On July 22, 1948, being a month before the lease was to expire, plaintiff brought this suit against Luding, Cox, the board and its administrator and members, seeking to have the court adjudge the retail beer license and the retail liquor license so issued to and in the name of defendants, Luding and Cox, and under which they were then operating, to be the property of the plaintiff, Richard Perry, and seeking a temporary restraining order and a permanent injunction to enjoin the transfer of such licenses "to any one other than plaintiff or to some eligible person named by him, and * * * to any other place * * * except by application of the plaintiff therefor."

Upon the filing of the complaint and a supporting affidavit by plaintiff, the district court, Judge Dean King presiding, issued a temporary restraining order against defendants, and also an order requiring the defendants to show cause on a day certain why such temporary injunctive order should not be made permanent. Defendants interposed a demurrer to the complaint and moved to dismiss the restraining order. The demurrer and motion were both denied, whereupon a disqualifying affidavit was filed against Judge King, following which Judge C. B. Elwell assumed jurisdiction in the matter. Issue being joined, the cause came on regularly for trial before Judge Elwell and was heard commencing on April 8, 1949.

At the outset of the trial the district court denied defendants' timely objection to the introduction of any evidence made upon

the grounds that the complaint fails to state facts sufficient to constitute a cause of action or to warrant the issuance of either a temporary or permanent injunction. The trial court also denied defendants' motion to dismiss the action on the ground that plaintiff had failed to prove his case, such motion being timely and made at the close of plaintiff's case in chief and after plaintiff had rested.

At the conclusion of the case and after the respective parties had submitted testimony and documentary evidence and all had rested, defendants renewed their motion to dismiss, which motion was granted by the trial court after having first considered the proof adduced at the trial. Judgment was thereupon given and entered dissolving the temporary restraining order and dismissing the action. This is an appeal from that judgment.

*Before* the making and delivery of the written instruments under which the bar and business were delivered into the possession of the defendants Luding and Cox, various conversations occurred wherein Barnes, Rand and plaintiff offered to sell all their right, title and interest in all the property for a named consideration but at no time was such offer so orally made ever accepted. Instead Luding and Cox took possession of and operated the bar under (a) the written lease agreement on the building housing the bar for one year; (b) the written bill of sale of the business including the contents of and the fixtures in the building wherein the tavern was operated and also including the retail beer and liquor licenses issued therefor; and (c) the separate written assignment from plaintiff alone of the retail beer and the retail liquor licenses for the described premises with the sellers' written request that the board issue new licenses to Luding and Cox as owners of the tavern.

Simultaneously with the making and delivery of the above three written instruments and as part of the same transaction, the sellers required the defendants, Luding and Cox, to sign and leave with the sellers, Barnes, Rand and the plaintiff, Richard Perry, a second set of papers, being (1) an assignment in blank on the board's approved form of the retail beer and liquor

licenses *to be* issued to the purchasers, Luding and Cox, and (2) a bill of sale purporting to transfer back to Barnes, Rand and plaintiff all the personal property described in the first bill of sale that day executed and delivered by the sellers to the defendants, Luding and Cox.

The first set of papers running *to* Luding and Cox are all dated September 22, 1947, being the true date while the second bill of sale running *from* Luding and Cox to Barnes, Rand and plaintiff bears date of the following day, September 23, 1947. Thus were the second bill of sale and the second assignment bearing the latter date designed to effect a cancellation of the first bill of sale anl assignment that day executed for, if valid, the second set of papers would place the title of the property back in Barnes, Rand and plaintiff exactly as if neither set of papers had been made. Kelly v. Grainey, 113 Mont. 520, 527, 129 Pac. (2d) 619, 622.

The blank assignment of the licenses reads: "For a good and valuable consideration and subject to the approval of the Montana Liquor Control Board, I hereby sell, assign, transfer and set over unto ———————————— of ————————————, all right, title and interest in and to
Retail Beer License No. ——————
Retail Liquor License No. ——————
and request that the said Montana Liquor Control Board approve this Assignment.

Dated at ————————————, Montana, this ——— day of ——————————, 1947.

"B. R. Luding
"Val Donna Cox
"Assignor

"Signed in the presence of:

————————————————

————————————————,"

Plaintiff bases his claimed right to an injunction and his claimed right to the retail beer and liquor licenses issued Octo-

580

ber 28, 1947, by the board to Luding and Cox upon: (1) the above blank assignment; (2) the second bill of sale bearing date of September 23, 1947; and (3) a claimed *oral* agreement alleged to have been made prior to the making of any of the written instruments, whereby it is claimed that Luding and Cox were to pay Barnes, Rand and plaintiff $25,000 for the building and contents within a year, or in lieu thereof to retransfer the personal property to Barnes, Rand and plaintiff and to also transfer the licenses which Luding and Cox were to receive to eligible holders to be designated by the plaintiff, Richard Perry.

*The Complaint.* Plaintiff's complaint filed July 22, 1948, is quite an unusual pleading.

In paragraph II thereof plaintiff pleads the purchase by Barnes, Rand and plaintiff from "Skip" Cameron of the building *"together with certain licenses* issued to him by the defendant Board * * * to protect" an unsecured indebtedness claimed to have been owing by the seller to the purchasers "and taking title to said building * * * *in the names of all of said purchasers* as tenants in common and causing said licenses to be transferred to this plaintiff, *he being the only eligible holder."* (Emphasis supplied.)

Paragraph III avers: "That subsequent to said purchase said parties laid out and expended the approximate sum of $9,000 for the completion of said building and the installation of furniture and fixtures therein with the intention of selling the same as a going business and in such manner make themselves financially whole."

Paragraph IV states: "That *after * * * the rendering of said premises suitable for the conduct of the business of selling beer and liquor at retail* * * * it was agreed * * * they would lease said building and fixtures to the said B. R. Luding and Val Donna Cox for the term of one year in order that they might operate a bar and tavern therein for such period and determine * * * if they wished to purchase the same, including the aforesaid licenses, for the sum of $25,000.00 and at said time it was *orally agreed* that if at the end of the term of said lease the said

B. R. Luding and Val Donna Cox desired to buy said property, a sale thereof would be effected * * * but if * * * said B. R. Luding and Val Donna Cox did not desire to buy said property for said sum, *they would reconvey such property to this plaintiff and the said S. J. Barnes and C. E. Rand, and would transfer said licenses to an eligible holder to be designated by the plaintiff.*'' (Emphasis supplied.)

Paragraph V shows: That pursuant to said *oral agreement* a lease of the premises was executed to Luding and Cox ''for the term of one year, beginning on or about the 20th day of August 1947 * * * at the stipulated rental of $2,000.00 for said term, which sum was then and there paid by the said B. R. Luding and Val Donna Cox; *that in order* for the said B. R. Luding and Val Donna Cox *to be enabled to operate said business in compliance with the laws of the State of Montana* there was executed a bill of sale of all the fixtures, equipment, supplies *and the liquor license and beer license located- on and issued for the above described premises from the said plaintiff and S. J. Barnes and C. E. Rand* to the said B. R. Luding and Val Donna Cox * * * and plaintiff, in accordance with the terms of the aforementioned agreement, executed an assignment of the aforementioned beer and liquor licenses * * * which transfer and assignment was approved by the defendant Board and beer and liquor licenses for the * * * premises issued by said Board to the said B. R. Luding and Val Donna Cox.''

Paragraph VI alleges: ''That *to show good faith* of all the parties *there was executed simultaneously* with the * * * lease, Bill of Sale and Assignment, a Bill of Sale of the same property *from* * * * B. R. Luding and Val Donna Cox *to* * * * plaintiff and * * * S. J. Barnes and C. E. Rand * * * together with an assignment of the said liquor and beer licenses *in blank,* which * * * were to become effective only in the event that * * * B. R. Luding and Val Donna Cox should fail to purchase said premises and property * * * and in no other event, and in case of the failure * * * to purchase * * * then in such event, and in such event only, said blank assignment *was to be filled in with the*

*name of an eligible holder to be designated by this plaintiff,* and such beer and liquor licenses transferred to such eligible holder.'' (Emphasis supplied.)

Paragraph VII asserts: ''That * * * in violation of their said agreement, and for the purpose of defrauding this plaintiff and of wrongfully and fraudulently obtaining said * * * licenses * * * in violation of the rights of this plaintiff'' Luding and Cox ''have now made application to * * * Montana Liquor Control Board for a transfer of said * * * licenses to premises other than the above * * * premises, and as plaintiff is informed and believes to some person or persons other than this plaintiff * * * with the intention of removing the * * * licenses from the above * * * premises and * * * of wrongfully and fraudulently obtaining said licenses in violation of their said agreement.''

Paragraph IX pleads that there is a clause in the lease providing that it ''may be terminated at any time by giving * * * thirty (30) days notice of such termination and the filing of this Complaint is intended as such notice to terminate said lease'' which ''does not by its terms expire until the 20th day of August, 1948, but'' Luding and Cox ''by their actions aforesaid have committed a breach of said lease and have indicated their intention of removing from said premises at such time as a transfer of said licenses might be effected, and have by such actions forfeited their right to continue to occupy said premises under said lease, however, this plaintiff offers to do equity and to restore to'' Luding and Cox ''any portion of the * * * rentals by them so paid that the Court may find due for the unused portion of said lease.''

Paragraph X reads: ''That Plaintiff is a tenant in common with S. J. Barnes and C. E. Rand of the above described premises *and has been authorized by his co-owners to conduct a retail beer and liquor business in the said premises* and that said premises are legally suitable for that purpose.''

The laws governing the sale of liquor in this state were written and enacted by the law-making branch of our state government.

Some were enacted solely by the legislative assembly. Some, like Chapter 84 of the Laws of 1937, were referred to the people of the state and by them approved at the general election held November 8, 1938. See Laws of 1939, page 731. All are enactments of the law makers of our state. None is the handiwork of the courts.

*Public Policy of Montana.* "It is * * * declared as the policy of the state * * * to eliminate certain illegal traffic in liquor * * * and *to insure the entire control of the sale of liquor in the Montana liquor control board,* * * * that the said board be empowered and authorized to grant * * * *to persons qualified* under this act, * * * and under rules and regulations promulgated by the said board, and *under its strict supervision and control,* and to provide severe penalty for the sale of liquor except by * * * persons licensed under this act. The restrictions, regulations and provisions contained in this act *are enacted by the legislature* for the *protection, health, welfare and safety of the people* of the state." R. C. M. 1947, Sec. 4-401. The words "the state" in the last quoted sentence means the state of Montana and not the state of Washington or some other state of the union. It is the people of the state of Montana who are to be protected in their "health, welfare and safety" by the Act,—by the Montana liquor control board and by the "rules and regulations promulgated by the said board." (Sec. 4-401.)

"Prior to the issuance of a license * * * the applicant shall file with the * * * board an application in writing, signed by the applicant, and containing such information and statements *relative to the applicant and the premises* where the liquor is to be sold, as may be required by the * * * board.

"The application shall be verified by the affidavit of the person making the same * * *. *If any false statement is made* in any part of said application, the applicant, or applicants, shall be deemed guilty of a misdemeanor and upon conviction thereof *the license, if issued shall be revoked* and the applicant, or applicants, subjected to the penalties provided by law." R. C. M. 1947, sec. 4-407. Emphasis supplied.

"The Montana liquor control board is * * * empowered * * * to issue licenses *to qualified applicants* to sell liquor at retail in accordance with * * * this act * * * upon the issuance of such license, *the licensee therein named* shall be authorized to sell liquor at retail but only in accordance with the rules and regulations promulgated by the * * * board and the provisions of this act." R. C. M. 1947, sec. 4-403. Emphasis supplied.

"Every license issued * * * shall set forth the name of the person to whom issued, the location * * * of the premises where the business is to be carried on under said license, and such other information as the board shall deem necessary. *If issued to a partnership the names of the persons conducting the business.* Such license * * * shall be nontransferable except and only with the consent of the board * * *. Every license issued * * * is separate and distinct, *and no person, except the licensee therein named, shall exercise any of the privileges granted thereunder,* and all licenses are applicable only to the premises in respect to which they are issued. * * *" R. C. M. 1947, sec. 4-410. Emphasis supplied.

"No license shall be issued by the board to: * * * 5. A person who is *not qualified* * * * 6. A person who * * * has not been a resident of the state of Montana for at least five (5) years *immediately preceding the filing of the application for license.* 7. A person who is *not the owner and operator* of the business." R. C. M. 1947, sec. 4-412. Emphasis supplied.

"No person shall be granted more than *one* license in any year. * * *" R. C. M. 1947, sec. 4-411. Emphasis supplied.

"For the purpose of the administration of this act the board shall make, promulgate and publish such rules and regulations as the said board may deem necessary * * * and except as may be limited or prohibited by law * * * such rules and regulations so made and promulgated shall have the force of statute. *Every licensee shall advise himself of such rules and regulations, and ignorance thereof shall be no defense.* Without limiting the generality of the foregoing provision, the said board shall be empowered * * * to prescribe forms * * * *providing for the in-*

*spection of such licensed premises,* specifying * * * the place and manner in which the liquor may be lawfully kept or stored, *covering the conduct, management* and equipment *of premises licensed* to sell liquor and make regulations respecting the sale * * * of liquor in * * * places of business of licensees." R. C. M. 1947, sec. 4-424. Emphasis supplied.

"The board may upon its own motion * * * investigate the action and operation of any licensee hereunder, and shall have power to temporarily suspend and/or permanently revoke a license * * * for violation of the provisions of this act or any rule or regulation promulgated by the board." R. C. M. 1947, sec. 4-425.

"The board or any duly authorized representative thereof * * * shall have the right at any time to make an examination of the premises of such licensee as to whether the law of Montana and the rules and regulations of the said board are being complied with * * *" R. C. M. 1947, sec. 4-428.

"No business shall be carried on under any license issued under this act except in the name of the licensee. No license shall be effective until a permit shall have been first secured under the laws of the United States if such a permit is necessary or is required under such law." R. C. M. 1947, sec. 4-438.

"Any person violating any of the provisions of this act, shall upon conviction thereof, be deemed guilty of a misdemeanor and punishable by such fine or imprisonment, or both, as provided by law, except as is herein otherwise provided. If any such licensee is convicted of any offense under this act his license *shall be immediately revoked,* or in the discretion of the *board suspended temporarily* for a time to be determined by the board." R. C. M. 1947, sec. 4-439. Emphasis supplied.

"Any person who has not been issued a license under this act, who shall sell or keep for sale any alcoholic liquor, shall be guilty of a felony and upon conviction thereof shall be fined not less than one thousand dollars ($1,000.00) nor more than five thousand dollars ($5,000.00), or be imprisoned in the state prison for

not less than one (1) nor more than five (5) years, or both such fine and imprisonment." R. C. M. 1947, sec. 4-420.

The power to define is the power to legislate. In writing the law the Montana legislature, in the exercise of power vested in it by the Constitution, saw fit to write into the law its own definition of certain words and phrases including the word "person," saying: " 'Person' means every individual, co-partnership * * * restaurant, club, * * * and all licensed retailers of liquor, whether conducting the business singularly or collectively." R. C. M. 1947, sec. 4-402, subd. 6.

No license would be required to authorize a person to sell intoxicating liquor in this state were it not for the above statutes governing such operations.

A liquor license is a temporary formal permit or grant issued by the state in the exercise of its police power, "to a qualified person" (secs. 4-402, subd. 4, 4-401, 4-403, 4-408, 4-409, 4-412, subd. 5) granting to the person named in the license as licensee (sec. 4-403) "and no person, except the licensee therein named" (sec. 4-410) the privilege "to sell and dispense liquor at retail" (sec. 4-402, subd. 4) on specific premises only (secs. 4-410 and 4-424) without which such operations would constitute a felony (sec. 4-420).

The privilege granted expires each year (sec. 4-410), may be renewed (secs. 4-429 and 4-412, subd. 4), and, for cause is at all times subject to being temporarily suspended or permanently revoked (secs. 4-425, 4-407, 4-439) or cancelled (sec. 4-427).

In 48 C. J. S., Intoxicating Liquor, secs. 99 and 109, pp. 223, 228, 229, it is said: "It [a liquor license] is a matter of privilege rather than of right, personal to the licensee, and is neither a right of property, not a contract or contract right, in the legal or constitutional sense of those terms. * * * It does not run with the business conducted under the privilege it grants, and is not an asset of it.

"Furthermore a liquor license or permit is not in itself property or a right of property, in the ordinary meaning of those

terms, and there is no market value attributable to it. However, it may have aspects or the quality of property. It is of value to the holder, and usually has some money value, sometimes great money value. Purchasers of the business have considered it as having something of value in excess of the license fee in jurisdictions where the statutes give such a purchaser a preference in the renewal of the license.

"As a rule liquor licenses are not assignable, or otherwise transferable, unless by statute and with the consent of the licensing authorities * * * However, as discussed in Attachment, sec. 74 a(9), liquor licenses are subject to attachment where a statute authorizes it."

The statute specifically provides that a liquor license "shall be nontransferable except and only with the consent of the board" (sec. 4-410) and the board is empowered to consent to such transfers only as are made to duly qualified persons being persons who are not denied the right to hold licenses originally. 48 C. J. S., Intoxicating Liquors, sec. 138, note 54, p. 247, citing Baltimore Retail Liquor Package Stores Ass'n v. Kerngood, 171 Md. 426, 189 A. 209, 109 A. L. R. 1253.

The law denies to the board the power to grant or issue a liquor license to any except "persons qualified under this act" (sec. 4-401). Not only that, but the law expressly *prohibits* the board from issuing any license to any person who is not so qualified. (Sec. 4-412.) By this means has the law freed the duly qualified holders of liquor licenses lawfully issued to them by the board from any and all of the varied and ingenious schemes, plans and devices cunningly and skillfully planned, worked out and invented which would subject such holders or their licenses to the control of any person, association, syndicate, agency or authority other than the Montana liquor control board acting within and pursuant to the powers granted it under the law, it being the expressed intent of the law and the declared public policy of the state "to insure the *entire control* of the sale of liquor in the Montana liquor control board." (Sec. 4-401.) Emphasis supplied.

Plaintiff specifies as error the failure of the court to decree him to be the owner of the beer and liquor licenses issued by the board to and in the names of the defendants, B. R. Luding and Val Donna Cox. In his complaint plaintiff pleads that he, Barnes and Rand purchased the building and licenses from "Skip" Cameron taking title to the building "in the names of all of said purchasers as tenants in common and causing said licenses to be transferred to this plaintiff, *he being the only eligible holder.*" Thus does plaintiff affirmatively aver that neither Barnes nor Rand were eligible to hold the licenses, meaning that they lacked the qualifications prescribed by law to entitle them to obtain or hold such licenses.

The record shows that neither Barnes, Rand nor plaintiff had been a resident of this state for at least five years *immediately preceding* (sec. 4-412, subd. 6) the time they purchased the building from Cameron with the avowed intention to "establish a bar" therein. Each of the three had recently removed to Montana from the state of Washington. Each had resided and been employed in the state of Washington for a period of years. None was or is qualified or eligible for a retail liquor license or to own or operate a bar in this state.

At the trial Barnes testified: "I am not eligible to own a license, only a short time in the state. I have no claim in the license and never intended to at any time."

On the witness stand Rand made answer to interrogations put to him as follows: "Q. Did you have any understanding who owned any interest in the liquor license? A. No, I didn't.

"Q. And why? A. That was all understood between Perry [plaintiff] and Cameron, he would get the license.

"Q. And your interest was in the building and nothing else? A. Yes, a quarter interest.

"Q. Did you later complete the building? A. Yes, sir. * * *

"Q. And the building was completed for what, if any purpose? A. Tavern."

As to the building purchased from Cameron plaintiff testi-

fied: "It was built for the operation of a bar." Again: "The building is built only as a bar and would be entirely unfit to use for any other purpose."

Upon closing the deal with Cameron for the building plaintiff filed with the board a written application for new beer and liquor licenses for the premises stating therein that his application was made in the capacity of "Owner." Good faith and the law required that plaintiff's application should truly state all the pertinent facts called for. The board was entitled to know the names of each and all the owners and operators of the business to the end that the names of all such owners and operators may be included in and appear on the license when issued as is required by the provisions of R. C. M. 1947, sec. 4-410. It is apparent that such information was withheld from the board when it issued state liquor licenses for both "The Club Bar & Cafe" and for "Skip's Bar" later called "The Hub Bar."

Plaintiff being ineligible, a retail liquor license for "The Club Bar & Cafe" was first issued by the board in Malvey's name alone and, a short while later Malvey assigned the license to plaintiff's father, O. W. Perry, who applied for and procured from the board a new license issued in the name of O. W. Perry alone.

This was to circumvent and evade the plain mandate of the law. In Coletti v. State Board of Equalization, 94 Cal. App. (2d) 61, 209 Pac. (2d) 984, 985, the court said: "The board must deny an application if either the applicant, or the premises for which the license is applied for, do not qualify for a license. *It seems clear that a partnership application should be denied if one of the partners is unable to qualify.* * * *

"There was but a single license although it stood in the names of the two partners. It cannot be invalid as to one partner and valid as to the other." Emphasis supplied.

The liquor licenses issued under the circumstances above related and upon the applications so made were invalid and subject to immediate cancellation and revocation under the provisions of R. C. M. 1947, secs. 4-407 and 4-425.

Equally unauthorized and illegal was the attempt to operate "The Hub Bar" through an unlicensed "acting manager" which operation was halted by the board's chief inspector on ascertaining the truth as to the operation on his inspection trip to Martin City.

On his direct examination at a hearing held July 28, 1948, on return of the order to show cause theretofore issued by Judge King and in response to questions put to him by his counsel, plaintiff testified: "Q. What is your father's name? A. O. W. Perry.

"Q. And O. W. Perry transferred that license to you? A. That license was transferred.

"Q. Sir? A. That license was transferred, eventually assigned to both of us, yes. We both appeared upon that license.

"Q. Do you remember the date of that transfer? A. Sometime, let's see the latter part of September, I believe, a year ago, or last year.

"Q. That would be September, 1947? A. It would be September in 1947."

Even though he were otherwise qualified to hold a state retail liquor license, which he was not, yet under the law, plaintiff could not qualify to operate, directly or indirectly, both "The Club Bar & Cafe" and "The Hub Bar."

There is ample evidence in the record tending to show that plaintiff was not at any time qualified to hold a state liquor license to operate "The Hub Bar," and he is most certainly in no position to here complain of the trial court's failure to decree him to be the owner of the state beer and liquor licenses therefor.

Plaintiff specifies as error the trial court's failure to make findings of fact as requested. Where, as here, the case is submitted to the court without a jury and the evidence justifies but one conclusion, formal findings are unnecessary though request be made for them in conformity with R. C. M. 1947, sec. 93-5305 and we have long since held that the judgment will not

be reversible if the request is disregarded. Milwaukee Land Co. v. Ruesink, 50 Mont. 489, 498, 148 Pac. 396.

Plaintiff's third and last specification is that the trial court ██ erred in dismissing the action. There is no merit in the specification. Not only does his complaint fail to show a right in the plaintiff to the relief demanded therein or to state a cause of action in his favor, but its averments affirmatively show a purchase of the bar, building, stock of liquor and the state retail beer and liquor licenses under which the business was operated by three purchasers as tenants in common, two of whom are alleged by plaintiff to be ineligible to hold the licenses so purchased. A state retail liquor license cannot be invalid as to two of the purchasers and yet be valid as to the third. Coletti v. State Board of Equalization, supra.

No restraining order should have issued against the Montana liquor control board or any other defendant herein, and defendant's demurrer to the complaint should have been allowed, thus obviating the necessity of a lengthy trial before a chancellor in a court of equity of a cause so utterly devoid of merit.

██ He who comes into equity must come with clean hands.

Judgment affirmed.

ASSOCIATE JUSTICES FREEBOURN, METCALF and BOTTOMLY concur.

MR. JUSTICE ANGSTMAN (dissenting):

My objection to the foregoing opinion is that by it the court in effect is usurping functions of the liquor control board in the administration of the liquor laws.

I think if the liquor licenses in question here were obtained by plaintiff through fraud or misrepresentation it merely rendered them voidable and not void, and hence they were not subject to collateral attack by one not a victim of the fraud. Town v. Tabor, 34 Mich. 262, and see 46 Am. Jur., ''Replevin,'' sec. 60, p. 36.

Here the liquor control board, the party claimed to have been

defrauded, makes no claim to that effect and has filed a waiver of all interest in the appeal.

The licenses might have been revoked or set aside by the liquor control board on proceedings brought for that purpose (R. C. M. 1947, sec. 4-342), but defendants who claim only the rights of plaintiff by assignment are in no position to complain that plaintiff had no right to the licenses and hence had nothing to assign.

If plaintiff had nothing to assign, then defendants acquired nothing by the assignment.

It may be too that defendants ought to have issued to them beer and liquor licenses. But that is a question for the liquor control board to decide. If they are entitled to licenses then they should have licenses which they can use. They cannot use the ones they now have on premises other than those owned by plaintiff and his tenants in common because of the holding in the case of State ex rel. Jester v. Paige, 123 Mont. 301, 213 Pac. (2d) 441, wherein the majority of this court (Justice Freebourn and I dissenting), held that a liquor license is applicable to the premises for which it was issued and may not be transferred to other premises.

I think plaintiff should have been declared to be the owner of the licenses in question subject, of course, to the right of the liquor control board if victimized by fraud to revoke them after notice and hearing. Likewise, whether defendants are entitled to usable licenses is a question that should be presented to the liquor control board.

Rehearing denied May 2, 1950.